Cooke, J.
This litigation arises out of a contract entered
into between plaintiffs and defendants on December 22, 1971 for the purchase and sale of a residential parcel in the City of Rochester designated as 29 Hoyt Place.
On June 3, 1909, a subdivision map of certain real property situate south of Hoyt Place and east of Winton Road was filed *478 in Liber 19 of Maps, at page 11, in the Monroe County Clerk’s Office. Interestingly, the tract was a bit southerly of the bed of the old Erie Canal. The map displayed 11 lots in all, those numbered 1, 2, 3 and 4 fronting on the southerly bounds of Hoyt Place, lot 4 being the most easterly of those shown, and lot 3 adjoining 4 and being immediately westerly of it. Lots 3 and 4 were sold at a mortgage foreclosure sale and a referee’s deed dated April 29,1955 conveyed them to defendants.*
Pursuant to a description and map for the appropriation of property of the New York State Department of Public Works filed in the Monroe County Clerk’s Office on September 25, 1959, the State appropriated a triangular-shaped piece of defendants’ land fronting on the south side of Hoyt Place. The triangle was described as beginning "in the existing southerly street line of Hoyt Place” at its intersection with the division line between property of Terrill on the west and property of defendants on the east, running thence southeasterly 90 feet "along said southerly street line of Hoyt Place” to its intersection with the division line between the property of Carleton and Seymour on the east and property of defendants on the west, thence southwesterly 98.36 feet through defendants’ lands to a point in the said division line between Terrill and defendants, thence northeásterly 32.74 feet along said last-mentioned division line to the point of beginning, containing 1,468 square feet of land. By a description and map filed by said Department of Public Works in the Monroe County Clerk’s Office on June 13, 1962, the State also appropriated a narrow strip, of which the Brighton Cemetery Association was the reputed owner, which strip adjoined the "southerly street line of Hoyt Place” and was located to the north of defendants’ premises.
Thereafter and on September 11, 1962, defendants gave a mortgage to the Columbia Banking Savings and Loan Association covering a parcel at the northeast corner of their premises. The description of the mortgaged tract included a frontage of 77.68 feet along the southerly bounds of Hoyt Place and indicated that its northwest corner was 20.68 feet along the south line of Hoyt Place from the west line of defendants’ premises. The total of these two distances along the southerly line of Hoyt Place equals the distance of one side of the *479 triangle as appropriated by the State in 1959, said side being also the relocated south line of Hoyt Place. The mortgage instrument stated that it was intended to mortgage a part of the premises conveyed to defendants in their 1955 deed and that there was excepted "therefrom the land appropriated by the State of New York for the Rochester City Eastern Expressway.” On June 12, 1963, defendants gave another mortgage to Columbia upon their remaining property, which included the 20.68 foot frontage on Hoyt Place, and which also excepted therefrom "the land appropriated by the State of New York for the Rochester City Eastern Expressway.” In January of 1964, a further mortgage was given by defendants to Columbia covering the said remainder and with the same exception.
In 1966 defendants conveyed to Tubiolo the parcel as first mortgaged to Columbia, same being carved out of the northeast portion of defendants’ premises. The deed description corresponded to that set forth in the mortgage and included the same exception as to the State appropriation. In 1969, Tubiolo deeded this parcel to Doland and at the time of transfer gave a mortgage to the Security Trust Company of Rochester.
Having read a newspaper ad, plaintiffs became interested in defendants’ house and lot. Plaintiffs visited the premises in early October of 1971 and spent about an hour there. According to testimony of plaintiff John Regan, he with defendant John Lanze, walked north out the driveway and easterly down Hoyt Place, the interstate highway was in plain sight, and Lanze pointed to a fence and said, "That’s the State’s fence and that fence runs all the way along the north side of Hoyt Place.” Lanze, on cross-examination, related that he also told Regan that he subdivided the lots after the street was moved so he could build a house.
Negotiations culminated in a contract of December 22, 1971 wherein defendants agreed to sell the property in the City of Rochester "known and described as No. 29 Hoyt Place. Lot size approximately 21’ x 109’ x 207’ x 264’ as per deed to you * * * together with a two story stone and frame dwelling now thereon.” The contract called for a closing of title on or before January 3, 1972 and, after questions were raised on behalf of plaintiffs regarding the effect of the appropriations and after divers mesne adjournments, a date was set for January 26, 1972. However, transfer of title did not then take place.
*480 The complaint of plaintiffs asserts four causes of action: first, for specific performance of the contract by defendants Lanze, for damages if said defendants cannot make good and marketable title to said premises, and for reformation of the descriptions in the mortgages to Columbia; second, for reformation of the deed to defendants Doland and of the mortgage given by said defendants to Security; third, for the recovery against defendant Charles Ambush Realty of the $1,000 deposit; and fourth, against the People of the State of New York for a declaratory judgment establishing rights of plaintiffs to easements over land appropriated by the State. The answer of defendants Lanze demanded judgment dismissing the complaint and asserted three counterclaims: one, for specific performance of the contract; a second, for damages for slander of title; and a third, for reimbursement of the broker’s commission.
Special Term denied plaintiffs’ motion for summary judgment and granted that of defendants Lanze for summary judgment dismissing the complaint and for judgment on their counterclaims. Applications of defendants Security and the State of New York to dismiss the complaint were granted. Upon appeal, the Appellate Division reversed the dismissal of the complaint as to Security (42 AD2d 830). Stating that a trial was required, the Appellate Division also reversed the grant of summary judgment in favor of defendants Lanze, which had resulted in dismissal of the complaint and the award of judgment to them on their counterclaims, and granted summary judgment to plaintiffs dismissing the Lanzes’ second and third counterclaims (42 AD2d 831). During the pendency of this appellate review, the appeal as to the State was discontinued upon delivery to plaintiffs of an instrument, executed by an assistant to the regional director of the Department of Transportation, declaring that the right of access of abutting owners, specifically 29 Hoyt Place, for ingress and egress and for maintenance of sewer connections in Hoyt Place as relocated was not taken by the appropriations of 1959 and 1962.
Shortly prior to trial a "correction deed”, quitclaim in form, signed by defendants Doland and Security, as well as by Peter and Ingrid Tub iolo, Dolands’ predecessors in title, was delivered to plaintiffs, whereupon the action was discontinued as to the Dolands and Security.
Following trial without a jury in Supreme Court, Monroe *481 County, it was found that the title to the property contracted to be conveyed by defendants to plaintiffs was good and marketable, that the description in the 1966 deed from Lanze to Tubiolo was accurate and properly described the property to be conveyed and that there was no limitation on the right of the owner of the parcel contracted to be conveyed to plaintiffs to access to Hoyt Place as relocated. Accordingly, the complaint was dismissed and judgment of specific performance was granted to defendants on their first counterclaim. Upon appeal from the judgment of Trial Term, the Appellate Division reversed, on the law and facts, granted judgment to plaintiffs for specific performance and awarded damages to plaintiffs. The Appellate Division found that defendants failed to produce marketable title and held that a title which requires parol evidence to prove its validity is not marketable.
In its opinion upon the second appeal, the Appellate Division stated: "Since we held on the first appeal that the record title was defective enough to require an evidentiary hearing on purchasers Regans’ claims, the trial court erred in determining that the defendants Lanzes’ title was marketable at the original date of closing” (47 AD2d, at p 382). The first appeal involved summary judgment and there were indications that there were questions of fact to be determined, such as the location of the Doland parcel, the inclusion or not of the triangular area at the north end of the premises and the description of the property covered by the contract. We can find no statement in the Appellate Division’s first memorandum decision to the effect that "the record title was defective enough to require an evidentiary hearing” and it does not follow that the trial court therefore erred in determining that Lanzes’ title was marketable, particularly when the character of the summary judgment motions under review on the first appeal is kept in mind.
The disposition of this case turns on the marketability of defendants’ title. A marketable title has been defined as one that may be freely made the subject of resale (Trimboli v Kinkel, 226 NY 147, 152; see 62 NY Jur, Vendor and Purchaser, § 48; 3 Warren’s Weed New York Real Property, Marketability of Title, § 2.01). It is one which can be readily sold or mortgaged to a person of reasonable prudence, the test of the marketability of a title being whether there is an objection thereto such as would interfere with a sale or with the market value of the property (Brokaw v Duffy, 165 NY *482 391, 399; Heller v Cohen, 154 NY 299, 306; Vought v Williams, 120 NY 253, 257; Schwartz, Real Estate Manual, p 581). The law assures to a buyer a title free from reasonable doubt, but not from every doubt (Norwegian Evangelical Free Church v Milhauser, 252 NY 186, 190; see Hall-Mark Realty Corp. v McGunnigle, 253 NY 395, 398), and the mere possibility or suspicion of a defect, which according to ordinary experience has no probable basis, does not demonstrate an unmarketable title (Cambrelleng v Purton, 125 NY 610, 616; Vought v Williams, 120 NY 253, 257-258, supra; Johnston v Garvey, 139 App Div 659, affd 201 NY 548; Cymerman Bros. v Payne Homes, 5 Misc 2d 792, 794, affd 4 AD2d 701, affd 4 NY2d 937). "If 'the only defect in the title’ is 'a very remote and improbable contingency’, a 'slender possibility only’, a conveyance will be decreed” (Norwegian Evangelical Free Church v Milhauser, 252 NY 186, 190, supra).
To be sure, a purchaser is entitled to a marketable title unless the parties stipulate otherwise in the contract (Laba v Carey, 29 NY2d 302, 311). Except for extraordinary instances in which it is very clear that the purchaser can suffer no harm from a defect or incumbrance, he will not be compelled to take title when there is a defect in the record title which can be cured only by a resort to parol evidence or when there is an apparent incumbrance which can be removed or defeated only by such evidence (Chesebro v Moers, 233 NY 75, 81-82; Cerf v Diener, 210 NY 156, 161-162; McPherson v Schade, 149 NY 16, 21; Moore v Williams, 115 NY 586, 592).
The trial court found that the parties did not intend that the parcels appropriated by the State be conveyed, and the Appellate Division observed that his seemed to be a fair interpretation of the evidence. Both courts also concurred that a reasonable evidentiary interpretation was that the parties intended to contract for the parcel bounded on the north by the south line of the relocated Hoyt Place as it existed in 1971.
Proof was submitted that Hoyt Place at the time in question was a public street maintained by the City of Rochester (see People v County of Westchester, 282 NY 224, 228). The owners of the parcel in question had the right of access to and from this public street since, when lands abut upon a public street, there is appurtenant to such lands an easement of access over the public street, whether or not the abutting owner owns the fee of the street (Donahue v Keystone Gas Co., 181 NY 313, *483 316; Lahr v Metropolitan El. Ry. Co., 104 NY 268, 288; St. Peter’s Italian Church Syracuse v State of New York, 261 App Div 96, 97; County of Chautauqua v Swanson, 260 App Div 124, 126). When the State acquired in 1959 the triangular parcel, situate southerly of and along the former southerly bounds of Hoyt Place, it did so for highway purposes, for the relocation of Hoyt Place. Upon acquisition of the triangle, it became a part of the right of way of Hoyt Place, as relocated, and as such was burdened with the usual right of access of the abutting owners (cf. Slepian v State of New York, 35 AD2d 462, 464; Griefer v County of Sullivan, 246 App Div 385, 386-387, affd 273 NY 515). The same result applied to the taking by the State from the Brighton Cemetery Association in 1962.
Although the description and map for the appropriation filed by the State in 1959 bore a legend reading "Rochester City: Eastern Expressway Interstate Route Connection 580-2-7”, it was apparent both from the map and description that the triangle appropriated was southerly of the "southerly street line of Hoyt Place.” Although the appropriation may have come into existence because of the construction of the Eastern Expressway, also known as Interstate Route 490, no part of the appropriated parcel was to be used for the said expressway. The appropriated parcel was away from and not contiguous to the expressway, Hoyt Place being located between it and the parcel. A fence existed between the northerly bounds of Hoyt Place and the expressway. Subdivision 2 of section 3 of the Highway Law defines "controlled access highways” as "those state highways which are entirely or partly constructed, reconstructed or improved at a location where no public highway theretofore existed and to and from which the owners or occupants of abutting property or of any other persons shall have no right of access * * * excepting at junctions of such highways with other public highways, and also excepting as such access may be reserved pursuant to the description and map of the property which has been or which hereafter shall be acquired in accordance with this chapter for the purpose of such controlled access highways” (emphasis supplied). Although the expressway itself was a controlled access highway, relocated Hoyt Place was not, the latter not being "at a location where no public highway theretofore existed.” Hoyt Place abutted the subject property before, as well as after, the taking and the relocation had no more effect on access than the widening of the. highway would have had *484 (see Bennett v McMorran, 21 AD2d 806, mot for lv to app den 15 NY2d 485).
The situation here bears a striking resemblance to that in Dormann v State of New York (4 AD2d 979, mot for lv to app den 4 NY2d 676), where there was an appropriation of land in connection with the construction of the State Thruway and a highway known as Route 59. Claimant had a restaurant and bar upon premises east of the Thruway and on the north side of Route 59. Besides the taking of a triangular piece adjacent to the Thruway leaving no right of access over it, the State appropriated a 12 1/2-foot-wide strip abutting and extending along Route 59 for 268 feet. Claimant argued that the appropriation of the fee for the strip along Route 59, without expressly reserving to her the right of access, cut her property off from the public highway except for the 17.75 foot frontage not taken. The court stated (p 979): "It clearly appears from the record that the land so taken was for the purpose of widening the highway at that point to connect with an overhead bridge to be constructed over the Thruway. Hence the land thus taken was devoted to a highway use and became a part of the highway * * * As such, claimant had a right of access over it in its entirety to every part of her land (Griefer v. County of Sullivan, 246 App. Div. 386, affd. 273 N. Y. 515; Robinson v. State of New York, 3 A D 2d 326). The situation in this respect was wholly different from the parcel taken for the Thruway itself over which there was no right of access.” Here too, the land was appropriated in connection with the construction of the expressway, the land taken was devoted to a highway use and became part of the highway, and there was not a taking for the expressway itself. Although plaintiffs obtained from a representative of the State a declaration that the State did not take in its appropriation of 1959 and 1962 the right of access of abutting owners, specifically 29 Hoyt Place, for ingress and egress to Hoyt Place as relocated, in return for which the appeal against the State was discontinued, that instrument did not alter the situation or cure any defect but, rather, merely reaffirmed the status existing under settled principles of law. Hence, resort to it as parol evidence was unnecessary. By the legend of "W.A.” on the 1962 map, it was indicated that the parcel taken was "with access”, meaning with access to the abutting owners, a point apparently conceded in the testimony of plaintiff John M. Regan, an attorney.
*485 Plaintiffs contend that the "descriptions” were defective in that they referred to Hoyt Place as set forth on a map recorded in Liber 19 of Maps, at page 11, in the County Clerk’s Office. Apparently the objection to the 1966 deed given by Lanze to Tubiolo, the predecessor of Doland, is that by referring to said map and to Hoyt Place as located thereon, without any reference to the relocation of Hoyt Place, an ambiguity was created as to what was being conveyed. The description in the Tubiolo deed, with which was recorded a surveyor’s map, shows that the real property therein conveyed was a part of lots 3 and 4 as shown on said map and reference is made to land appropriated by the State for the expressway. An examination of the description and map demonstrate that the Hoyt Place frontage accorded with that street as relocated and there was no need for resort to the correction deed obtained by plaintiffs or other parol evidence in this respect. Each of the three proposed deeds intermittently tendered by defendants adequately described the premises contracted to be conveyed.
The order of the Appellate Division should be reversed and the judgment of the Supreme Court, Monroe County, granting judgment to defendants on the first counterclaim in their answer, reinstated, with costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, and Fuchsberg concur with Judge Cooke; Judge Jones dissents and votes to affirm on the opinion by Mr. Justice Harry D. Goldman at the Appellate Division (47 AD2d 378).
Order reversed, with costs to defendants, and the judgment of Supreme Court, Monroe County, reinstated.

*486

 Appended to this opinion is a rough sketch which may be helpful in following the discussion (see p 486).