181 N.J. Super. 367 (1981)
437 A.2d 728
EDWARD DONOVAN AND DONNA DONOVAN, FORMERLY KNOWN AS DONNA RELLINGER, PLAINTIFFS-APPELLANTS,
v.
CARL BACHSTADT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted September 28, 1981.
Decided November 5, 1981.
*368 Before Judges BISCHOFF, KING and POLOW.
Glenn Berman for appellants.
Zolkin & Smith for respondent (W. Randolph Smith on the brief).
The opinion of the court was delivered by KING, J.A.D.
The issue here is whether real estate purchasers may recover increased mortgage interest costs as damages from a seller who breached an agreement of sale. The Law Division judge summarily held that any alleged mortgage interest increment was too speculative to be recoverable as damages. The disappointed buyers appeal.
On January 19, 1980 plaintiffs Edward and Donna Donovan entered into a contract with defendant Carl Bachstadt to purchase real property at 80 Weehawkin Avenue in Middletown *369 Township for $58,900. The standard-form real estate sales contract, completed by a realtor, required that the seller take back a purchase-money mortgage of $44,000 for 30 years at 13% interest.
Defendant did not own the property at the time the contract was executed. He intended to acquire title from his companion Joan Lowden just before the closing scheduled for May 1, 1980 and then convey to plaintiffs. Bachstadt in good faith believed that Lowden owned the property under a deed from the township dated December 1, 1977. A title search conducted in February 1980 disclosed that the record owners were Anthony and Jane Mettrick, and not Lowden. Apparently the township's 1977 tax foreclosure action against the property while owned by the Mettricks was conducted improperly. Therefore, the township never had obtained good title to convey to Lowden. Plaintiffs were told of the title problem before the closing. They have admitted that Bachstadt never affirmatively represented owning the property when the agreement was executed.
On May 5, 1980 plaintiffs filed a complaint in the Chancery Division demanding specific performance and seeking reformation of the interest clause to 10 1/2%, the maximum legal rate at the time the agreement was executed. On June 4, 1980 the Chancery Division judge granted summary relief ordering that "Carl Bachstadt specifically perform all obligations required of him under the contract, subject, however, to the interest rate stated therein of 13% being reformed to be 10 1/2...." No claim for damages for breach of contract was asserted in the Chancery Division action. No appeal was ever taken from the judgment.[1]
When it became inevitable that defendant could never specifically perform, this proceeding for money damages was brought *370 in July 1980. In January 1981 plaintiffs moved for summary judgment seeking these damages:
1. $142.85 for the costs of searches, which disclosed that the defendant did not and never had clear title to said property,
2. $145.00 for a survey of the subject property,
3. Compensatory damages and
4. Punitive damages
The Law Division judge awarded the costs of the search and the survey ($287.85) as damages; he rejected the claims for punitive damages and the only other claim for compensatory damages, the benefit of the bargain for the 30-year purchase money mortgage at the 10 1/2% reformed interest rate. The judge explained that "The breach of contract was the breach of the contract to deliver the property. The mortgage financing was only incidental to the basic concept," and also concluded that "the damages are speculative." Therefore no plenary hearing was held on the issue of compensatory damages.
On appeal plaintiffs limit their contention to the claim that "the cost of higher financing" is a compensable element of damages.[2] They generally contend, although the record does not so disclose, that a new transaction, with a higher interest rate on the mortgage, has been consummated for a similar property. This differential they claim as damages. An offer of proof on excluded evidence, see R. 1:7-3, would have been helpful to us in understanding the details of plaintiffs' claim.
Initially, we conclude that the allegedly pertinent statute is merely declarative of plaintiffs' general common-law right to recover consequential damages for breach of contract. The statute says:
When any person shall contract to sell real estate and shall not be able to perform such contract because of a defect in the title to the real estate, the *371 person with whom such contract was made, or his legal representatives or assigns, may, in a civil action, recover from the vendor, not only the deposit money, with interest and costs, but also the reasonable expenses of examining the title and making a survey of the property, unless the contract shall provide otherwise. This section shall not preclude the recovery by the purchaser from the vendor of any other damages to which he may be entitled by law. [N.J.S.A. 2A:29-1; emphasis supplied]
The statute, and its antecedent (L. 1915, c. 159, § 1), was apparently designed to overcome the original common-law rule that limited a disappointed purchaser of real estate to recovery of the deposit only plus interest from the breaching seller where title was defective. Ganger v. Moffett, 8 N.J. 73, 78 (1951); Rabinowitz v. Debow, 104 N.J.L. 62 (E. & A. 1927).
In the original version, L. 1915, c. 159, § 1, the final sentence of the statute had stated that: "[t]his act shall not limit the recovery where the purchaser may seek to recover for the deceit or fraud of the vendor." The above italicized final sentence in the present version of N.J.S.A. 2A:29-1 was substituted for the original final sentence by amendment during the overall process of amendment, supplementation and compilation consequent upon the repeal of N.J.S.A. Title 2 and the adoption of Title 2A in 1951. See L. 1951, c. 344. There is no extant legislative history to shed light on this 1951 amendment. To us the amendment to N.J.S.A. 2A:29-1 demonstrates a design to apply the general law of damages to these aborted transactions, i.e., "[i]n fixing damages, the general problem of the law is, and should be, to put a plaintiff in as good a position as he would have been had the defendant kept his contract." Giumarra v. Harrington Heights, 33 N.J. Super. 178, 196 (App.Div. 1954), aff'd o.b. 18 N.J. 548 (1955); see, also, Paris of Wayne v. Richard A. Hajjar Agency, 174 N.J. Super. 310, 318-320 (App. Div.), certif. den. 85 N.J. 454 (1980).
Favorable financing terms in any contractual agreement may be of great significance to a promisee, especially in times of fluctuating or rising interest rates. See Daly v. Daly, 179 N.J. Super. 344 (App.Div. 1981) (present rate on first mortgages hovers at 16 1/2%); see, also, Editorial, 107 N.J.L.J. 236 (1981). *372 The question of whether a purchaser is entitled to compensation for increased costs of financing caused by breach has arisen when damages are sought in conjunction with a specific performance decree. Three reported cases permit recovery. In Reis v. Sparks, 547 F.2d 236 (4 Cir.1976) (Maryland law), buyers had a mortgage commitment for 20 years at 7 1/2%. When they finally obtained specific performance two years later in an equity action, the rate had increased to 9 1/2%. The trial judge awarded damages for the differential, discounted to present value, although the agreement of sale contained no terms concerning financing. The Circuit Court affirmed because the breaching seller actually knew that the buyer planned to finance and because a damage award reflecting the increase in mortgage interest rates which made the injured party whole was not an abuse of discretion. A similar result was reached in Godwin v. Lindbert, 101 Mich. App. 754, 300 N.W.2d 514 (1980). The Michigan Court of Appeals affirmed the award of damages representing the difference between the 8 1/2% rate in effect at the time plaintiffs had procured a commitment but defendant had refused to convey and the 11 1/4% rate in effect when the trial court ordered specific performance. The Appellate Division in New York has also permitted the recovery of increased mortgage costs, saying: "This additional cost is a predictable consequence arising out of delay in conveying title." Regan v. Lanze, 47 App.Div.2d 378, 366 N.Y.S.2d 512, 516 (1975), rev'd on other grounds 40 N.Y.2d 475, 354 N.E.2d 818, 387 N.Y.S.2d 79 (Ct.App. 1976).
Two cases arguably take the contrary view. In Dunning v. Alfred H. Mayer, 483 S.W.2d 423 (Mo. App. 1972)[3], defendant contracted to sell a certain lot to plaintiffs and to build a specific house on it in 1967; plaintiffs obtained a 30-year financing *373 commitment at 6% interest. Defendant failed to construct the building and the loan commitment eventually expired. At trial in 1971 plaintiffs sought specific performance and damages. The trial judge found it impossible to order specific performance, apparently because the developer had built a commercial structure on the lot. The testimony established that the prevailing interest rate for home mortgages was 7 1/2% at the time of trial in 1971. Plaintiffs had made no substitutional purchase or agreement to purchase a home between 1967 and 1971. The trial included an interest differential sum of $6,336 in its general award of damages to plaintiffs. The Missouri Court of Appeals reversed, saying:
The loss of the bargain relating to the property and dwelling was a real loss for which the Dunnings are entitled to damages as discussed supra, but there is no evidence to indicate that the Dunnings suffered any real loss as to the increased interest rates. There is no evidence that they had contracted for or committed themselves for a loan for any particular period of time.
........
We believe under the evidence presented, this item of alleged damages representing the additional costs of financing due to increased interest rates was remote and contingent and should not under the circumstances be awarded. [at 429]
This result was criticized in Corbin, Contracts, § 1098 at 202-203 (Kaufman supp. 1980), as follows:
... [T]he court reversed the award of damages for the difference on interest rate, on the ground that the rise was too remote and speculative, since Dunning had not actually applied for another loan at the time of trial. This holding is unsound. The reason why he had not applied for a loan elsewhere was he was still hoping to get specific performance; there is no reason to suppose that on buying another house he would pay cash for it. That possibility is the one which is remote and speculative, not the possibility that on buying a house he will have to borrow money. At least it is a question of fact which possibility is more likely. [Emphasis in original]
We view the holding in Dunning by the Missouri Court of Appeals as turning on the passage of four years between breach and trial without proof of any new transaction to acquire a home offered by plaintiffs. If plaintiffs had entered into a comparable transaction for a home, we believe that the Missouri court would have allowed the differential as damages. Therefore, the Corbin-Kaufman criticism may be too broad.
*374 Our courts have never slavishly required proof of damages to mathematical precision in contract cases. For instance, Judge Larner stated in Sandler v. Lawn-A-Mat, 141 N.J. Super. 437 (App.Div.), certif. den. 71 N.J. 503 (1976):
Obviously, Lawn-A-Mat was found to be the wrongdoer who breached the contract. Presumptively this entitled Penn-Jersey to damages. Mere difficulty or lack of certainty in the proof or finding of the quantum of damages does not inhibit an award to the successful party. As noted by the Supreme Court in Tessmar v. Grosner, 23 N.J. 193 (1957):
If the evidence affords a basis for estimating the damages with some reasonable degree of certainty, it is sufficient. Wolcott, Johnson & Co. v. Mount, 36 N.J.L. 262, 272 (Supp.Ct. 1873), affirmed 38 N.J.L. 496 (E. & A. 1875). The rule relating to the uncertainty of damages applies to the uncertainty as to the fact of damage and not as to its amount, and where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery. Oliver v. Autographic Register Co., 126 N.J. Eq., 18, 25 (Ch. 1939); Weiss v. Revenue Building & Loan Ass'n, supra. [161 N.J.L. 208, 182 A. 891]; Wolcott, Johnson & Co. v. Mount, supra [at 203].

Accord: Rubel & Jensen Corp. v. Rubel, 85 N.J. Super. 27, 41 (App.Div. 1964); Monaco v. Pepperidge Farms, Inc., 94 N.J. Super. 39, 42 (Ch.Div. 1967); McCormick, Evidence, § 26 at 99 et seq.; 5 Corbin, Contracts, § 1022 at 142. Doubts are resolved against the breaching party. Hodgson v. Applegate, 55 N.J. Super. 1, 17 (App.Div.), aff'd 31 N.J. 29 (1959).
We conclude that the trial judge's estimate herein has a reasonable basis in the record evidence and, although not exact, represents an appropriate and conservative result legally warranted by the particular circumstances of the case. [at 454]
This more flexible approach to plaintiffs' recovery of damages, where the fact of damage is certain but the amount of damage approximate, is approved in the new Restatement, Contracts 2d, § 352 at 144 (1981), "Uncertainty as a Limitation on Damages."[4] The Restatement 2d retains the "reasonable certainty test" expressed in the original work. See Restatement, Contracts, § 331 at 515 (1932). But on the issue of the "requirement of certainty" comment a. of the second edition states:
Doubts are generally resolved against the party in breach. A party who has, by his breach, forced the injured party to seek compensation in damages should not be allowed to profit from his breach where it is established that a significant *375 loss has occurred. A court may take into account all the circumstances of the breach, including willfulness, in deciding whether to require a lesser degree of certainty, giving greater discretion to the trier of the facts. Damages need not be calculable with mathematical accuracy and are often at best approximate. See Comment 1 to Uniform Commercial Code § 1-106. This is especially true for items such as loss of good will as to which great precision cannot be expected. See Illustration 4. Furthermore, increasing receptiveness on the part of courts to proof by sophisticated economic and financial data and by expert opinion has made it easier to meet the requirement of certainty. [Restatement, Contracts 2d, § 352, Comment a. at 144-145]
The Uniform Commercial Code also urges a more flexible, less exact, approach. Article One states that remedies "shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed...." N.J.S.A. 12A:1-106(1). Comment 4 to § 2-715 asserts the Code's identical attitude towards the certainty problem:
The burden of proving the extent of loss incurred by way of consequential damage is on the buyer, but the section on liberal administration of remedies rejects any doctrine of certainty which requires almost mathematical precision in the proof of loss. Loss may be determined in any manner which is reasonable under the circumstances.
See N.J.S.A. 12A:2-712; White & Summers, Uniform Commercial Code, § 10-4 at 321-323 (1972).
Finally, our own Supreme Court has recently commented on the subject in Kozlowski v. Kozlowski, 80 N.J. 378 (1979), a contract action brought by a woman against a man with whom she had cohabited for 15 years, seeking to recover assets accumulated during those years, the reasonable value of services rendered for his benefit and future support. While upholding the trial judge's finding of breach of an express agreement, the Supreme Court stated on the damage issue:
While the damages flowing from defendant's breach of contract are not ascertainable with exactitude, such is not a bar to relief. Where a wrong has been committed, and it is certain that damages have resulted, mere uncertainty as to the amount will not preclude recovery  courts will fashion a remedy even though the proof on damages is inexact. Albemarle Paper Co. v. Moody, 422 U.S. 405, 418-419, 95 S.Ct. 2362 45 L.Ed.2d 280 (1975); Tessmar v. Grosner, 23 N.J. 193, 203 (1957). [at 388]
We therefore conclude that the interests of justice require a remand for a hearing on the issue of compensatory damages *376 arising from the alleged differential in mortgage interest rates. At the conclusion of this hearing the trial judge should determine the amount of damages based on reasonable certainty in light of the authorities above discussed and the facts established before him. If plaintiffs have entered into a comparable transaction for another home, as the record suggests they have, or are likely to do so in the near future, a comparison of the respective financing arrangements may well yield an appropriate measure of damages. Any award of future damages must be reduced to present value. An award should also represent the likely true life of the promised mortgage, its realistic benefit to plaintiffs and the eventuality of a sale by plaintiffs, with or without an assumption of the mortgage by their vendee. Plaintiffs also should be held to their general duty to mitigate damages. See Sommer v. Kridel, 74 N.J. 446, 457 (1977). Finally, if the proofs show that plaintiffs have withdrawn from their quest to purchase a home and are not likely to do so in the near future, any economic damages are indeed remote and speculative.
The judgment of the Law Division is modified and, as so modified, is remanded for a plenary hearing on the issue of compensatory damages arising from the alleged mortgage differential. The judgment is in all other respects affirmed.
NOTES
[1] Defendant had asserted that because the legal maximum interest rate had risen above 13% by date of closing, May 1, the 13% rate specified in the purchase-money mortgage clause had become valid. Since no appeal was taken from the Chancery Division judgment, it is not before us for review. We imply no view as to whether it was correct or incorrect.
[2] We do not perceive plaintiffs' appellate argument as urging a reversal of the dismissal of their punitive damage claim. Under the facts they are clearly not entitled to punitive damages. See Restatement, Contracts 2d, § 355 at 154 (1981); see, also, Sandler v. Lawn-A-Mat, 141 N.J. Super. 437, 448 (App. Div.), certif. den. 71 N.J. 503 (1976).
[3] West Hill Constr. Corp. v. Horwath, 149 Conn. 608, 182 A.2d 919 (Sup.Ct. Err. 1962), may be read as rejecting recovery for interest differential but probably only holds that the evidence was inadequate to support such an award even if it was legally cognizable.
[4] For a review of the Restatement, Contracts 2d (1981), see "Symposium for the Restatement (Second) of Contracts," 81 Col.L.Rev. 1 (1981).