In re OYSTER BAY COVE, LTD., Debtor.

Kenneth P. SILVERMAN, Trustee of the Estate of Oyster Bay Cove, Ltd., Appellee,

v.

Chaim ANKARI, Appellant.

No. 94–CV–499 (TCP).

United States District Court, E.D. New York.

Feb. 24, 1996.

---

Freddie Grafstein, Deer Park, NY, for Oyster Bay Cove, Ltd.

Floyd G. Grossman, Dollinger, Gonski, Grossman Permut & Hirschhorn, Carle Place, NY, for Chaim Ankari.

Steven B. Soll, Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for Bank of New York.

Gary F. Herbst, Jaspan, Ginsberg, Schlesinger Silverman & Hoffman, Garden City, NY, for Kenneth P. Silverman.

### MEMORANDUM AND ORDER

PLATT, District Judge.

Appellant appeals from an order of the Bankruptcy Court, Eisenberg, B.J., authorizing the Trustee in bankruptcy to retain Appellant's $250,000.00 deposit after Appellant defaulted on his winning bid following a court approved auction of the Debtor's land. For the reasons stated herein, the decision of the Bankruptcy Court is affirmed.

### BACKGROUND

Oyster Bay Cove, Ltd. (the "Debtor") filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code on November 21, 1990. Appellee, Kenneth P. Silverman (the "Trustee"), was appointed to serve as trustee. A Bankruptcy Court order dated June 6, 1991, approved the Trustee's application to sell by public auction approximately thirty acres of vacant, partially improved land belonging to the Debtor. The order detailed that the land was to be sold "free and clear of liens, claims, and encumbrances."

Appellant, Chaim Ankari ("Ankari"), was the winning bidder at the public auction held pursuant to the judicial order. Ankari's winning bid was to purchase the entire parcel of land for $2,600,000.00. Pursuant to the "Terms and Conditions of Sale," which were approved by the Bankruptcy Court, any bidder wishing to bid upon the entire parcel was required to give a $250,000.00 deposit to the Trustee. Accordingly, Ankari gave the Trustee the required deposit before submit-

ting his bid. Following the auction, the Trustee and Ankari entered into a contract by signing the "Terms and Conditions of Sale." Under the "Terms and Conditions of Sale," the deposit would be forfeited as liquidated damages if Ankari breached the contract. Further, the "Terms and Conditions of Sale" indicated that the property was being sold "as is" and "subject to (a) such facts as an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show." The "Terms and Conditions of Sale" were attached to the Bankruptcy Court order and incorporated into the order by reference.

The property, although sold in bulk, actually consisted of twelve individual lots. These lots included a dedicated road and a storm basin. Both of these were clearly marked on a map of the property and a "Declaration of Covenants and Restrictions," which was filed with the local authorities and recorded on May 3, 1989.

The contract specified that time was of the essence and scheduled closing for 10:00 A.M. on September 6, 1991. Two days prior to closing, Ankari's attorney advised the Trustee of "title defects" related to the property. These "defects" included the easements of the road and the storm basin, both belonging to the Village of Oyster Bay Cove, as well as a list of lien creditors that had levied against the property. The Trustee did not agree that title defects existed, however, because the creditors'[1] liens, by operation of the Bankruptcy Court order, would attach to the proceeds and not to the land of the innocent purchaser. Further, the road and storm drain were both readily apparent, clearly marked and recorded. The Trustee believed that neither the easements nor the lienholders constituted a defect in the title. Indeed, the Trustee believed that Ankari simply had failed to raise the needed financing to purchase the property.

On September 6, the Trustee, having waited all day in vain for Ankari to appear at the

---

1. A separate issue exists, discussed *infra*, regarding the significance of the lienholders not having been notified of the Trustee's sale of the land.

closing, proceeded with the formalities and noted that Ankari was in default. Later that evening, Ankari's attorney faxed a letter to the Trustee stating that the Trustee was in default because he could not deliver marketable title.

Ankari asserts that he is entitled to a refund of his $250,000.00 deposit. The Bankruptcy Court, noting a strong public policy in enforcing Bankruptcy Court ordered sales, believed the excuses offered by Ankari for not honoring the contract to be without merit. The Bankruptcy Court found that neither the lienholders nor the easements: a) rendered title unmarketable; or b) were at variance with the Court order to sell the property "Free and Clear of Liens, Claims and Encumbrances."

## DISCUSSION

■ The Bankruptcy Court's findings of fact will not be disturbed unless clearly erroneous, whereas conclusions of law are reviewed *de novo*. *See Truck Drivers Local 807 v. Carey Transp. Inc.*, 816 F.2d 82, 88 (2d Cir.1987); *In re Tesmetges*, 47 B.R. 385, 388 (E.D.N.Y.1984) (holding that Bankr.R. 8013 requires reviewing court to make independent determination regarding legal conclusions).

■ Ankari asserts two main positions in his appeal to this Court. He argues that the Bankruptcy Court erroneously decided that neither the lienholders nor the easements: a) affected the validity of the sale; or b) rendered title unmarketable. Both of these arguments represent questions of law and thus are reviewed *de novo*.

### A. The Lienholders

Ankari asserts that the Trustee's sale of the land was never valid because it was at variance with the Bankruptcy Court order specifying that the land should be sold "Free and Clear of Liens, Claims and Encumbrances." A bankruptcy sale that is "free and clear" of liens, Ankari asserts, is only valid if all parties who have such liens are served and have an opportunity to be heard. *See* 11 U.S.C.A.Bankr.R. 6004 (West 1995). In the present case, it is undisputed that tax lienholders whose interest amounted to $62,188.49 were not notified of the sale.

■ This argument can not prevail. Under Bankruptcy Rule 6004,[2] notice to the lienholders must precede the trustee's motion to sell land "free and clear" of liens, with such liens then attaching to the proceeds. It has long been established, however, that the decision to grant the motion can not be collaterally attacked in suits between the trustee and a vendee. *In re Met–L–Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir.1988), *cert. den.*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989); *In the Matter of Garfinkle*, 672 F.2d 1340, 1348 (11th Cir.1982); *Slocum v. Edwards*, 168 F.2d 627, 631 (2d Cir.1948). Therefore, Appellant may not challenge the sale on the ground that proper notice was not given to the lienholders.

■ Furthermore, The Bankruptcy Code provides specific protection for the purchaser of land following a judicial order of sale. Under the Code, the good faith purchaser may not be affected by the prior lienholders who now only have a claim against the proceeds of the sale, via the trustee.[3] This remains true even if the lienholders obtain a reversal or modification of the judicial sale order.[4]

2. Bankruptcy Rule 6004(c) provides:
Sale free and clear of liens and other interests. A motion *for authority* to sell property free and clear of liens or other interests shall be ... served on the parties who have liens or other interests in the property to be sold.
11 U.S.C.A.Bankr.R. 6004(c) (West 1995) (emphasis added).

3. The Bankruptcy Court also correctly noted that Ankari has no standing to assert the rights of these lienholders since § 363(m) would not give the creditors a cause of action against Ankari.

4. *See* 11 U.S.C.A. § 363(m) (West 1995):

The reversal or modification on appeal of an authorization ... of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased such property in good faith, whether or not such entity knew of the pendency of the appeal....
*Id.*

It therefore stands to reason that Ankari's concern regarding the lienholders presenting a "title defect" was not well founded. Rather, this concern regarding the lienholders, whose interest was only $62,188.49, arose from a misunderstanding of the law. As previously noted, Appellant has no right under 11 U.S.C.A. § 363(m) to challenge the Trustee's authority to sell the land "free and clear" of the lienholders. Moreover, pursuant to 11 U.S.C.A. § 363(m), the sale "free and clear" of the lienholders would have protected Ankari as a subsequent good faith purchaser, regardless of any future action by the lienholders against the Trustee or the proceeds.[5]

Further, as a practical consideration, it is unlikely that any of the lienholders would have challenged the sale. In the wake of the sale, the lienholders would have a stake in the cash proceeds, from which they could be satisfied, unlike a lien against property.[6]

### B. The Road and The Storm Basin

▮ Ankari's other main argument on appeal is that the dedication of the road and the drainage easement destroyed the marketability of title. The first point Ankari raises is that certain provisions of the "Terms and Conditions of Sale" conflict with the Bankruptcy Court order of sale. Specifically, Ankari argues that the terms "as is" and "subject to ... any covenants, restrictions, and easements of record" in the "Terms and Conditions of Sale" are at variance with the Bankruptcy Court order to sell "Free and Clear of Liens, Claims and Encumbrances."

The Bankruptcy Court, however, approved the "Terms and Conditions of Sale" and incorporated these terms into the Court order by reference. Further, the "Terms and Conditions of Sale" were read to all the bidders, including Ankari, in open court prior to the sale, and Ankari signed the Court approved "Terms and Conditions" following the acceptance of his winning bid. Therefore, any interpretation of "free and clear" that precludes the property from being sold "as is" or subject to restrictions is suspect at best and a collateral attack upon the Bankruptcy Court order at worst.

▮ As the Bankruptcy Court correctly points out, a sale "free and clear of liens and other interests" has no impact on restrictions of record that run with the land. "Free and clear" should be interpreted as speaking of interests *against the property*, such as liens or mortgages, which now attach to the proceeds of the sale. *See* discussion, *supra*. Therefore, the order to sell "free and clear" has no affect on the dedication of the road and the storm drain, which are easements that run *with* the land. Clearly, 11 U.S.C.A. § 363(f)[7] and Bankruptcy Rule 6004,[8] which refer to the sale of land "free and clear" from these "interests," are not intended to sever easements and other non-monetary property interests that are created by substantive State law. Indeed, absent the consent of the owner of the easement or the easement being

---

**5.** It should be noted that the rights of the lienholders in this situation would be limited, even against the Trustee. The Trustee may sell property "free and clear" of liens against the property *without* the consent of the lienholders where the price for which the property is to be sold is greater than the aggregate of the lienholder's interests. 11 U.S.C.A. § 363(f)(3) (West 1995) (emphasis added). The aggregate of the liens against the property in the instant case was only $62,188.49 as compared to the sale price of $2,600,000.

**6.** Thus, allowing Ankari to renege on his bid following a judicially ordered sale, under the guise of protecting the lienholders' interests, would be intolerable. Such would "deprive the debtor *and lienholders* of the benefit of an offer made by a more serious bidder." *In re Winston Inn & Restaurant Corp.*, 120 B.R. 631, 637 (E.D.N.Y.1990) (emphasis added).

**7.** 11 U.S.C.A. § 363(f) (West 1995) provides:

The trustee may sell property ... free and clear of any interest in such property of an entity other than the estate, only if—
(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
Id.

**8.** *See* Bankruptcy Rule 6004(c), *supra* note 2.

in bona fide dispute, the Bankruptcy Code does not even allow the Bankruptcy Court to authorize a sale of the property "free and clear" of an easement.[9] Therefore, the terms "as is" and "subject to ... any covenants, restrictions and easements of record" do not contradict the order and hence are valid.

 Because it is a valid provision, the "as is" nature of the sale cuts against Ankari's claim of unmarketable title. As the Bankruptcy Court properly noted, the doctrine of caveat emptor applies to bankruptcy sales. *In re Laughinghouse*, 51 B.R. 869, 876 (Bankr.E.D.N.C.1985) (citing *In re Governor's Island*, 45 B.R. 247, 253 (Bankr. E.D.N.C.1984)). These courts have relied upon the United States Supreme Court holding in *Slaughter's Administrator v. Gerson*, 80 U.S. (13 Wall.) 379, 383, 20 L.Ed. 627 (1871):

> A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say he has been deceived by the vendor's misrepresentations.

*Id.* It is axiomatic that claims of unmarketable title are without merit where the easement or encroachment is open or notorious. The purchaser is presumed to purchase subject to these notorious easements. *Whitman v. Larson*, 172 A.D.2d 968, 568 N.Y.S.2d 485, 487 (3d Dep't 1991); *Short Clove Assocs. v. Ilana Realty, Inc.*, 154 B.R. 21, 25 (S.D.N.Y. 1993). In the instant case, the road and storm basin were not only readily apparent upon a physical inspection of the property,

and clear on the map present at the auction, but also filed with the Town and recorded.

 The Bankruptcy Court also found no evidence that the Trustee had unmarketable title to the property. Under New York law, marketability of title rests on whether there is an objection to title that would interfere with a sale or with the market value of the property. *Regan v. Lanze*, 40 N.Y.2d 475, 481, 387 N.Y.S.2d 79, 83, 354 N.E.2d 818, 822–23 (1976). Marketability does not ensure a purchaser of title free from every doubt. *Id.*

The clearest evidence that, notwithstanding all of the above, title to the property was not unmarketable is that the Trustee did in fact sell the property to a subsequent bidder for $2,125,000.[10]

## C. The Trustee's Ability to Close on the Closing Date

 The Bankruptcy Court correctly noted that Ankari had put forth no evidence that the Trustee was unable to close as of 10:00 A.M. on June 6, 1991. Ankari argues that certain transfer tax documents required by New York State were not executed. The Bankruptcy Court found that while these documents are executed prior to the actual title transfer being effectuated, this execution occurs at the closing meeting. Therefore, it was the failure of Ankari to appear at the closing that caused the necessary tax documents not to be executed.

 The Bankruptcy Court also correctly noted that in order for a purchaser to place a vendor in default for failure to clear title, the purchaser must normally first tender performance himself and then demand good title. *Willard v. Mercer*, 83 A.D.2d 656, 657, 442 N.Y.S.2d 200, 201 (3d Dep't 1981), *aff'd*, 58 N.Y.2d 840, 460 N.Y.S.2d 18, 446 N.E.2d 774 (1983).

---

9. 11 U.S.C.A. § 363(f), *supra* note 7. Three of the five instances where property may be sold "free and clear" of an interest will never, by law, apply to an easement. Only consent or dispute, neither of which apply in this case, would have allowed the Trustee to sell the property "free and clear" of the easements.

10. This subsequent purchase price was $475,-000.00 less than Ankari's bid. This amount plus $20,000.00 in additional advertising and marketing expenses incurred by the Trustee and substantial legal fees incurred by the Trustee and the mortgagee, The Bank of New York, created substantial actual damages as a result of the breach by Ankari. These damages demonstrate the reasonableness of the $250,000.00 deposit forfeited as liquidated damages.

## CONCLUSION

The challenges here asserted to both the manner of the Trustee's sale and to the marketability of title are without merit. For the reasons stated herein, the decision of the Bankruptcy Court must be, and is hereby, AFFIRMED.

SO ORDERED.