In re Betsy M. ALAMO, Debtor.

Charles W. Grant, Trustee, Plaintiff,

v.

Lewis Carr and Bonnie
Carr, Defendants.

Bankruptcy No. 98–05068–3P7.
Adversary No. 98–268.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Sept. 21, 1999.

Ronald Bergwerk, Jacksonville, FL, for trustee.

Arthur Hernandez, Jacksonville, FL, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Chief Judge.

This proceeding came before the Court upon a Motion for Contempt and for Money Judgment brought by Charles W. Grant ("Plaintiff"), Chapter 7 Trustee, against Lewis Carr and Bonnie Carr ("Defendants"). Upon the evidence presented at the hearing on August 5, 1999, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. On March 15, 1999, Plaintiff obtained a judgment in this Court against Defendants permanently enjoining them from using in any way whatsoever the vehicular or pedestrian entrance over certain real property belonging to the bankruptcy estate of Betsy M. Alamo ("Debtor"). The judgment declares void any claim, use, possession, or easement of Defendants with respect to the property and reserves jurisdiction to enforce the removal by Defendants of the vehicular entranceway over the real property. (Adv. Doc. 10.)

2. On April 24, 1999, Plaintiff visited the subject real property. Plaintiff visually observed that Defendants reside on the parcel adjacent to the estate's property, have road frontage available for direct access to a public roadway, and have a culvert available leading from their property to the roadway. Nonetheless, Defendants' mailbox was placed in front of the estate's property and Defendants' appeared to have been continuing to use the entranceway over the property. Plaintiff observed that no other vehicular access had been constructed to Defendants' property, and the driveway constructed on the estate's property led to no other dwelling.

3. Plaintiff filed a Motion for Contempt and for Money Judgment on May 26, 1999. (Adv. Doc. 13.)

4. Plaintiff testified at the evidentiary hearing that Defendants' continued use of the property has hindered his administration of the estate by preventing him from marketing the property. Plaintiff estimated the cost of removing the culvert on the estate property at $350–$400. Plaintiff also requested $500 attorney's fees for prosecuting the contempt motion.

5. Lewis Carr testified that subsequent to Plaintiff's April 24, 1999 visit, he constructed his own driveway, moved his mailbox and ceased using the estate's property for access to his property. Mr. Carr also indicated that any delay in compliance with this Court's order was due to his failing health and extreme weather conditions.

### CONCLUSIONS OF LAW

The Supreme Court of the United States discussed the rationale behind an imposition of sanctions for civil contempt in *United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). In *United Mine Workers*, 330 U.S. at 293, 67 S.Ct. 677, the Court noted that civil contempt is remedial in nature and is generally imposed to compensate the complainant for losses sustained. Imposition of civil contempt does not depend on the intent of the defendant, rather it seeks to compensate for losses or damages caused by defendant's noncompliance with the court's order. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *United States v. KS*

& W Offshore Engineering Inc., 932 F.2d 906 (11th Cir.1991). An award that goes beyond compensation may be awarded to coerce compliance with a court order. McComb, 336 U.S. at 188, 69 S.Ct. 497.

 Pursuant to 11 U.S.C. § 105, "the Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. See 11 U.S.C. § 105 (1999). Further, Federal Rule of Bankruptcy Procedure 9020(b) states in relevant part: "Contempt committed in a case or proceeding pending before a bankruptcy judge ... maybe determined by the bankruptcy judge only after a hearing on notice." See FED.R.BANKR.P. 9020. Pursuant to § 105 and Rule 9020, courts have found that bankruptcy judges have the authority to hold a party in civil contempt. See Hardy v. Internal Revenue Service (In re Hardy), 97 F.3d 1384, 1388 (11th Cir. 1996); Burd v. Walters (In re Walters), 868 F.2d 665 (4th Cir.1989); In re First RepublicBank Corp., 113 B.R. 277, 279 (Bankr.N.D.Tex.1989); In re Brilliant Glass, Inc., 99 B.R. 16, 18 (Bankr.C.D.Cal. 1988). Also, upon a finding of contempt bankruptcy courts may properly award attorney's fees against a party that violates an injunction. Thomas v. Resolution Trust Corp. (In re Thomas), 184 B.R. 237, 240–42 (Bankr.M.D.N.C.1995) (citations omitted). Nonetheless, in order to be found in civil contempt, the offending party must have knowingly and willfully violated a definite and specific court order. Thomas, 184 B.R. at 241 (quoting In re Ryan, 100 B.R. 411, 417 (Bankr.N.D.Ill. 1989)).

 Plaintiff alleges that Defendants have knowingly and willfully violated this Court's permanent injunction entered March 15, 1999. (Pl.'s Mem. at 2–3.) Plaintiff seeks attorney's fees for bringing and prosecuting the contempt motion, and damages in the amount of the cost to remove Defendants' incursion on the estate's property. (Id.) Defendants contend that because their entranceway over the estate's property is an easement that runs with the land, this Court's prior order authorizing sale of Debtor's property "free and clear" of all liens, has no impact on this restriction of record. Defendants cite In re Oyster Bay Cove, Ltd., 196 B.R. 251 (E.D.N.Y.1996) to support this proposition. Alternatively, Defendants assert that their delay in complying with the Court's order of March 15, 1999 was due to extraordinary circumstances, i.e. Lewis Carr's health problems and impossible weather conditions.

For the reasons discussed below, Defendants' arguments fail. First, Defendants' reliance on Oyster Bay Cove, 196 B.R. 251, is misguided. In Oyster Bay Cove, 196 B.R. at 253–54, the successful bidder at the auction of the Chapter 7 debtor's real property asserted a right to a refund of his security deposit based on the trustee's alleged failure to provide marketable title. The bankruptcy court order approving the trustee's application to sell debtor's property detailed that the land was to be sold "free and clear of liens, claims, and encumbrances." Id. at 255. Further, the "Terms and Conditions of Sale" incorporated into the bankruptcy order indicated that the property was being sold "as is" and "subject to ... any covenants, restrictions, and easements of record." Id.

The successful bidder asserted that a dedication of a road and drainage easement to the property destroyed the marketability of title, and the terms "as is" and "subject to ... any covenants, restrictions, and easements of record" were at variance with the bankruptcy court order to sell "Free and Clear of Liens, Claims and Encumbrances." Oyster Bay Cove, 196 B.R. at 255. The Oyster Bay Cove Court noted that absent the consent of the owner of the easement or the easement being in bona fide dispute, neither of which were present, the Bankruptcy Code does not allow the bankruptcy court to authorize a sale of the property "free and clear" of an easement. See id.; 11 U.S.C. § 363(f) (1999); FED.R.BANKR.P. 6004.

Therefore, the court held that "the terms 'as is' and 'subject to ... any covenants, restrictions and easements of record' do not contradict the order and are valid." *Oyster Bay Cove*, 196 B.R. at 256. In finding no evidence that the trustee had unmarketable title to the property, the court noted that "[b]ecause it is a valid provision, the 'as is' nature of the sale cuts against [the bidder's] claim of unmarketable title." *Id.*

Defendants have simply misconstrued the issue before the Court. The instant proceeding does not concern whether or not a bankruptcy court order to sell "free and clear" of all liens would allow a trustee to sell estate property "free and clear" of an easement. By order dated March 15, 1999, the Court entered judgment in favor of Plaintiff and against Defendants, and further established the parties' respective interests to the subject property. The Court's judgment ordered Defendants to turn over the portion of the estate property upon which Defendants had constructed the vehicular drive, determined any claim or interest of Defendants in the estate's property to be void, and established a permanent injunction prohibiting Defendants from continuing with any use of the entranceway. Moreover, the Court retained jurisdiction to enforce the removal by Defendants of the vehicular drive over the estate's property. (Pl.'s Ex. 1; Adv. Doc. 10.) Plaintiff brought the instant Motion for Contempt and for Money Judgment because Defendants were allegedly continuing to use the property in violation of the Court's permanent injunction. (Adv. Doc. 13.) Therefore, the only issue before the Court is whether Defendants are in contempt of this Court's permanent injunction, and if so, what damages, if any, are warranted. Accordingly, *Oyster Bay Cove*, 196 B.R. 251, is inapplicable.

Moreover, Defendants' contention that their delay in complying with the Court's judgment of March 15, 1999 was due to extraordinary circumstances is not supported by the record. Defendants failed to introduce any documentary evidence concerning extreme weather conditions or of Mr. Carr's failing health. Mr. Carr's testimony concerning these factors was questionable at best. Based on the evidence presented, it is clear that Defendants knowingly and willfully disobeyed the Court's judgment. Mr. Carr testified that when he received the judgment he took it to a lawyer for advice. Mr. Carr did not seek any type of relief from the judgment; instead, he apparently decided to ignore it. Plaintiff testified that upon visiting the real property, he observed that Defendants reside on the parcel adjacent to the estate's property, have road frontage available for direct access to a public roadway, and have a culvert available leading from their property to the roadway. Nevertheless, Defendants' mailbox was placed in front of the estate's property and there were fresh automobile tracks on the entranceway. Moreover, Plaintiff observed that no other vehicular access had been constructed to Defendants' property, and the driveway constructed on the estate's property led to no other dwelling. Plaintiff also introduced photographs to support his testimony. (Pl.'s Ex. 2.)

■ Because Defendants knowingly and willfully violated the Court's permanent injunction by continuing to use the culvert after receiving the Court's March 15, 1999 judgment, it is appropriate to charge them with the cost of removing the entranceway to ensure against future disobedience. The Court finds this authority in § 105 and Rule 9020, and assesses the cost at $350. The Court also notes that the March 15, 1999 judgment specifically provides for further enforcement of the injunction by compelling Defendants to remove the vehicular and pedestrian entranceway. Additionally, Plaintiff is entitled to attorney's fees in the amount of $500 for bringing the contempt motion.

### CONCLUSION

Based on the evidence presented, Plaintiff's Motion for Contempt and for Money

Judgment is well taken, and is accordingly granted. A separate order will be entered in accordance with foregoing.