OPINION OF THE COURT
Robert F. Doran, J.
A contract for the sale of certain real property was entered into between the parties. The contract called for the purchase of only a portion of defendant’s real property and stated that the conveyance was to be subject not only to all covenants, conditions, restrictions and easements of record, but also to zoning and environmental protection laws. Transfer of title was to take place on or about May 1, 1986.
On August 26, 1986, the seller’s attorney sent to the purchaser’s attorney a time-of-the-essence notice stating that the closing must take place on or before August 29, 1986 or the contract of sale would be considered null and void and the down payment returned. On September 2, 1986, the same *39 attorney sent the purchaser’s attorney a letter stating the contract had been canceled and declared null and void. The down payment of $5,000 was returned.
The purchaser takes the position that it did not have to close on the date required by the seller because the seller could not give marketable title. The purchaser seeks a judgment directing that the seller comply with the contract and make the title marketable by applying to the Village of Voorheesville for subdivision approval and that the seller specifically perform its obligations upon obtaining subdivision approval. The purchaser also seeks an injunction to restrain the seller from conveying or encumbering the premises so as to defeat the rights of the purchaser.
The issue before the court appears to be one of first impression, to wit: In the absence of specific contract language as to the duty to obtain subdivision approval, is title unmarketable where a seller of a portion of his property fails to comply with a municipality’s subdivision regulations which require that, whenever any subdivision of land is proposed to be made and prior to any contract of sale or any offer to sell any lots, the subdivider or his duly authorized agent shall apply in writing for approval of such subdivision? The court concludes that such failure does make the title unmarketable and relieves the purchaser from closing until the approval is obtained. The court further concludes that, where such subdivision regulations are in effect and a seller of a portion of his property enters into a contract and such contract is silent, it is the seller’s affirmative duty to obtain approval and the purchaser is entitled to a judgment requiring the seller to obtain such approval.
"A marketable title has been defined as one that may be freely made the subject of resale * * *. It is one that can be readily sold or mortgaged to a person of reasonable prudence, the test of marketability of title being whether there is an objection thereto such that would interfere with a sale or with the market value of the property” (Regan v Lanze, 40 NY2d 475, 481).
The court is aware of the cases dealing with the standard wording of real estate contracts that the contracts are subject to all existing zoning laws and regulations. For example, if a contract of sale states that a minimum-sized building lot is 9,000 square feet and the zoning law is changed before the closing to require 15,000 square feet, the purchaser must still *40 go through with the sale, and the change of zoning does not render the title unmarketable (see, Levin v Kissena Manor Corp., 17 Misc 2d 746).
However, the situation here concerning subdivision approval is vastly different. Municipalities have become increasingly sophisticated in regard to the control of land use, and subdivision regulations are now prevalent in New York municipalities. In the court’s experience, where a purchaser has obtained a portion of property from a seller without obtaining subdivision approval, municipalities will prevent the purchaser from doing anything allowed by zoning until the requisite subdivision approval is obtained. Indeed, there have been situations where municipalities have attempted to revoke certificates of occupancy upon discovering that a building permit was issued in error because subdivision approval had not been obtained before the owner obtained a portion of the property from another for building purposes.
Attorneys in the real property field who have an opportunity to review real estate contracts before the parties sign them are now beginning to include a specific provision dealing with the duty to obtain subdivision approval, particularly where the purchase is for only a part of the property. Unfortunately, at least in the Capital District at the present time, real estate brokers who use their own printed forms have not revised the forms to reflect a duty on either party to obtain subdivision approval where the contract includes only a portion of the seller’s total property.
One must also bear in mind potential future problems. A problem could arise if, for example, a person obtains a deed of a portion of the property of the seller without obtaining subdivision approval, holds it for a while and then attempts to resell. At that time, it might be impossible or very, very difficult to backtrack and obtain subdivision approval because the original seller may no longer be available or may be unwilling to cooperate. These kinds of situations coupled with the current attitude of municipal enforcement of subdivision regulations, in the court’s view, make the title unmarketable unless the seller obtains the subdivision approval as required by the municipality’s regulations.
The relief requested by plaintiff is granted. The cross motion of the defendant is denied.