*567
 
 OPINION OF THE COURT
 

 Hancock, Jr., J.
 

 The first issue in this case is whether the subdivision regulations of the Village of Voorheesville apply to a conveyance of a portion of a parcel of land where it is intended by the parties to the transaction that the lands shall remain undeveloped. If the regulations apply, then the primary issue is whether defendant seller’s failure to seek subdivision approval before the transfer renders the title unmarketable. We conclude that the Village’s subdivision regulations apply to this sale of property. But we further hold that defendant’s refusal to seek the subdivision approval here does not cause the title to be unmarketable. Because no provision in the contract requires defendant to obtain subdivision approval and the only basis for plaintiffs specific performance claim is its failed assertion of unmarketable title, we reverse, deny plaintiffs summary judgment motion for specific performance, and dismiss the complaint.
 

 I
 

 On January 15, 1986, plaintiff Voorheesville Rod & Gun Club, Inc., signed a standard preprinted contract with defendant E. W. Tompkins Company, Inc., to purchase a portion of defendant’s property located in the Village of Voorheesville, Albany County, for $38,000. The contract specified that the property would be conveyed by warranty deed subject to all covenants, conditions, restrictions and easements of record, and also to zoning and environmental protection laws, "provided that this does not render the title to the premises unmarketable.” The property to be conveyed consisted of 24.534 acres of undeveloped land used for recreational purposes. The parties agree that plaintiff buyer did not intend to change the existing condition or use of the property after the purchase.
 

 On August 23, 1986, prior to the revised closing date, plaintiffs attorney sent defendant’s attorney a copy of the Village of Voorheesville’s subdivision regulations and requested that defendant comply with them. Defendant did not seek subdivision approval. Defendant sent plaintiff a time-of-the-essence notice, demanded a closing on August 29, 1986, and notified plaintiff that if it did not close, that would be considered an anticipatory breach of contract. When plaintiff failed to close, defendant canceled the contract and returned
 
 *568
 
 plaintiffs $5,000 deposit. On September 4th, plaintiff informed defendant that the cancellation was unacceptable because defendant’s failure to obtain subdivision approval had rendered the title unmarketable and, for that reason, plaintiffs financing bank was unwilling to close. Plaintiff then sought the requisite approval from the Village of Voorheesville Planning Commission. The Commission denied the application, stating that the subdivision regulations required that the application be submitted "by the [property] owner or an agent of the owner.”
 

 Plaintiff commenced this action on September 12, 1986, for specific performance or damages for breach of contract and then moved for partial summary judgment seeking specific performance. Supreme Court ordered that the contract be specifically performed by defendant and directed that defendant apply to the Village for subdivision approval and close on the subject property within a reasonable time after approval. The court held that defendant’s failure to obtain subdivision approval made the title unmarketable and relieved plaintiff from closing until the approval was obtained
 
 (Voorheesville Rod & Gun Club v Tompkins Co.,
 
 141 Misc 2d 38).
 

 The Appellate Division affirmed, stating that the sale of a portion of defendant’s real property subjected the sale to the subdivision regulations of the Village of Voorheesville, even though development of the land was not then contemplated. The Court concluded that defendant’s refusal to obtain subdivision approval rendered the title unmarketable, particularly because it appeared that plaintiff "would be 'plagued by zoning problems’ ”
 
 (Voorheesville Rod & Gun Club v Tompkins Co.,
 
 158 AD2d 789, 791).
 

 Thereafter, plaintiff moved in Supreme Court for an order compelling defendant to file the subdivision application and convey the property. Noting that the subdivision application had been made and approved, Supreme Court directed defendant to transfer the property. Then the parties stipulated to discontinue all causes of action interposed in the pleadings except plaintiffs claim for specific performance of the contract. This Court granted defendant leave to appeal from the stipulation, deemed a judgment, bringing up for review the prior nonfinal Appellate Division order pursuant to CPLR 5602 (a) (1) (ii).
 

 II
 

 The preliminary issue is whether the Village’s subdivision
 
 *569
 
 regulations apply at all under the circumstances presented. If they do not, that is the end of the matter and we do not reach the separate question of whether defendant’s refusal to obtain subdivision approval rendered the title to the property unmarketable. Thus, we must first interpret the Village’s Land Subdivision Regulations, which provide in pertinent part:
 

 "Article II: Definitions
 

 * * *
 

 "Subdivision: means the division of any parcel of land into two or more lots, blocks, or sites, with or without streets or highways and includes re-subdivision.
 

 * * *
 

 "Article III: Procedure in Filing Subdivision Applications
 

 "Whenever any subdivision of land is proposed to be made, and before any contract for the sale of, or any offer to sell any lots in such subdivision or any part thereof is made, and before any permit for the erection of a structure in such proposed subdivision shall be granted, the subdivider or his duly authorized agent shall apply in writing for approval of such proposed subdivision.”
 

 Defendant maintains that, pursuant to article III, subdivision approval is required only in instances where building or development is contemplated; and because no development of the subject property was intended, the regulations do not apply in this case. This claim is not persuasive. It is undisputed that defendant was selling only a portion of its property; therefore, the subject property transfer constituted a subdivision within the meaning of article II of the regulations. Article III clearly requires subdivision approval "[w]henever any subdivision of land is proposed” and before any sales contract is executed. Contrary to defendant’s interpretation, merely because article III requires subdivision approval,
 
 inter alla,
 
 "before any permit for the erection of a structure in such proposed subdivision shall be granted”, it does not follow that subdivision approval is necessary
 
 only
 
 when a building permit will be sought
 
 (see, Matter of Esposito v Town of Fulton Planning Bd.,
 
 188 AD2d 779). Indeed, defendant’s interpretation would effectively limit the purpose of the regulations to controlling building on individual parcels of property. Such an
 
 *570
 
 interpretation is contrary to the Village’s broader policy, as stated in article I of the regulations, to "consider land Subdivision Plats as part of a plan for the orderly, efficient and economical development of the Village”, which means, among other things, that "all proposed lots shall be so laid out and of such size as to be in harmony with the development pattern of the neighboring properties”. Clearly, the stated policy of the regulations is that subdivision approval should be acquired for any proposed subdivision, not just those to be immediately developed.
 

 Ill
 

 Given that the subdivision regulations apply, we turn to the main issue: whether lack of subdivision approval constitutes a cloud on the title which renders the title unmarketable. It is undisputed that the contract is silent as to the specific issue of subdivision approval. Thus nothing in the contract imposes upon defendant the affirmative obligation of obtaining subdivision approval.
 
 [1]
 
 Rather, paragraph 4 of the contract, entitled "Existing Conditions”, provides that the property would be conveyed by warranty deed
 

 "subject to all covenants, conditions, restrictions and easements of record.
 
 Subject also to zoning and environmental protection laws;
 
 any existing tenancies; * * * and any state of facts which an inspection and/or accurate survey may show,
 
 provided that this does not render the title to the premises unmarketable”
 
 (emphasis added).
 

 As stated, plaintiff was to purchase the property subject to zoning laws, which are closely related to subdivision regulations
 
 (see generally, Matter of Golden v Planning Bd.,
 
 30 NY2d 359, 372; 2 Anderson, New York Zoning Law and Practice § 21.02 [3d ed]). This requirement conforms to the well-settled rule that "where a person agrees to purchase real estate,
 
 *571
 
 which, at the time, is restricted by laws or ordinances, he will be deemed to have entered into the contract subject to the same [and] [h]e cannot thereafter be heard to object to taking the title because of such restrictions”
 
 (Lincoln Trust Co. v Williams Bldg. Corp.,
 
 229 NY 313, 318;
 
 see, Pamerqua Realty Corp. v Dollar Serv. Corp.,
 
 93 AD2d 249, 251; 3 Warren’s Weed, New York Real Property, Marketability of Title, § 8.07 [4th ed]; Annotation,
 
 Zoning or Other Public Restrictions On the Use of Property as Affecting Rights and Remedies of Parties to Contract for the Sale Thereof,
 
 §§ 3, 5 [b], 39 ALR3d 362, 370, 376).
 

 The only limitation that the contract places upon plaintiffs duty to purchase the property subject to zoning laws is when the application of such laws would render title to the property unmarketable. It was not necessary for the contract to specify that a marketable title was required because, in the absence of a stipulation to the contrary, it is presumed that a marketable title is to be conveyed
 
 (see, Regan v Lanze,
 
 40 NY2d 475, 482;
 
 Laba v Carey,
 
 29 NY2d 302, 311; 3 Warren’s Weed,
 
 op. cit,
 
 Marketability of Title, § 1.01). Accordingly, the issue reduces to whether the lack of subdivision approval constitutes a defect in the title which makes it unmarketable.
 

 The test of the marketability of a title is "whether there is an objection thereto such as would interfere with a sale or with the market value of the property”
 
 (Regan v Lanze,
 
 40 NY2d 475, 481,
 
 supra).
 
 A marketable title is "a title free from reasonable doubt, but not from every doubt”
 
 (id.,
 
 at 482). We have said that a "purchaser ought not to be compelled to take property, the possession or title of which he may be obliged to defend by litigation. He should have a title that will enable him to hold his land free from probable claim by another, and one which, if he wishes to sell, would be reasonably free from any doubt which would interfere with its market value”
 
 (Dyker Meadow Land & Improvement Co. v Cook,
 
 159 NY 6, 15). As can be seen from these definitions, marketability of title is concerned with impairments on title to a property, i.e., the right to unencumbered ownership and possession, not with legal public regulation of the use of the property
 
 (see, Lincoln Trust Co. v Williams Bldg. Corp.,
 
 229 NY 313, 318,
 
 supra;
 
 5A Warren’s Weed,
 
 op. cit.,
 
 Title, § 1.01;
 
 compare,
 
 3 Warren’s Weed,
 
 op. cit.,
 
 Marketability of Title, §§ 1.01, 2.01,
 
 with
 
 § 8.07). Accordingly, a zoning ordinance, existing at the time of the contract, which regulates only the use of the property, generally is not an encumbrance making the title unmarketable
 
 *572
 

 (see, Lincoln Trust, supra,
 
 at 318;
 
 Anderson v Steinway & Sons,
 
 178 App Div 507, 513,
 
 affd
 
 221 NY 639;
 
 Pamerqua Realty Corp. v Dollar Serv. Corp.,
 
 93 AD2d 249, 251,
 
 supra;
 
 3 Warren’s Weed,
 
 op. cit.,
 
 Marketability of Title, § 8.07; 1 Rasch, New York Law and Practice of Real Property § 22.61 [2d ed]).
 

 Where, however, a contract expressly provides that the seller warrants and represents that, upon purchase, the property will not be in violation of any zoning ordinance, the purchaser "is entitled to demand that the vendor rectify the same or return any moneys paid on account”
 
 (Pamerqua Realty Corp.,
 
 93 AD2d 249, 251,
 
 supra; see, Artstrong Homes v Vasa,
 
 23 Misc 2d 608 [Meyer, J.]; 3 Warren’s Weed,
 
 op. cit.,
 
 Marketability of Title, § 8.07; 1 Rasch,
 
 op. cit.,
 
 § 22.61). Contrary to plaintiff’s claim, the present case does not fall within this exception to the general rule. Defendant did not warrant or represent that it would obtain subdivision approval; rather, plaintiff agreed to purchase the property subject to the zoning laws. In effect, plaintiff is attempting to add a term to the contract after the deal has been made. Thus, although defendant’s failure to obtain subdivision approval was a violation of the regulations which were in effect when the parties contracted, such violation did not make the title unmarketable
 
 (see, Lincoln Trust, supra,
 
 at 318;
 
 Pamerqua Realty Corp.,
 
 93 AD2d 249, 251,
 
 supra;
 
 3 Warren’s Weed,
 
 op. cit,
 
 Marketability of Title, § 8.07; 1 Rasch,
 
 op. cit.,
 
 § 22.61).
 
 [2]
 

 We recognize, as noted by the courts below, the increasing sophistication of municipalities regarding subdivision regulation and their ability to prevent the purchaser from developing property as allowed by the zoning laws until the requisite subdivision approval is obtained
 
 (see, Delaware Midland Corp. v Incorporated Vil. of Westhampton Beach,
 
 79 Misc 2d 438, 445,
 
 affd on opn below
 
 48 AD2d 681,
 
 affd on opn at Sup Ct
 
 39 NY2d 1029 ["Implicit in the power to control subdivisions is the authority to prevent illegal development by denial of permission to build”];
 
 see also,
 
 Village Law § 7-714; Town Law § 268;
 
 Matter of Golden v Planning Bd.,
 
 30 NY2d 359, 372,
 
 supra; cf., Freundlich v Town Bd.,
 
 73 AD2d 684,
 
 affd
 
 52 NY2d 921 [property may not be sold pursuant to invalid sales map without approval of planning board]). The solution for avoid
 
 *573
 
 ing such problems, however, is not for the courts to expand the conditions which render title unmarketable, thereby altering the concept of marketability of title, but for the parties to real estate contracts to include specific provisions dealing with the duty to obtain subdivision approval.
 

 Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be reversed, with costs, plaintiff’s motion for partial summary judgment should be denied, and defendant’s cross motion for summary judgment dismissing the complaint should be granted.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa and Smith concur; Judge Levine taking no part.
 

 Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.
 

 [1]
 

 . To the extent that plaintiff now claims — distinct from its argument that lack of subdivision approval renders the title unmarketable — that defendant has an implied good-faith contractual duty to obtain subdivision approval as a precondition of performing the contract, this issue was not raised by plaintiff in its summary judgment motion papers and thus is not preserved for our review.
 

 We also note that this is not a case where the seller is seeking specific performance of a contract to compel a buyer to purchase property lacking subdivision approval or where a municipality is trying to block such a conveyance, and we do not address such situations here.
 

 [2]
 

 . Since it is undisputed that plaintiff did not intend to develop or further partition the parcel but only to continue its recreational use, there is no basis for any claim that the property would be "plagued by zoning problems”.