99 F.3d 401
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
LAWYERS TITLE INSURANCE CORPORATION, Plaintiff-Appellee,
v.
THE BANK OF NEW YORK, Defendant-Appellant.
 No. 95-7514.
 United States Court of Appeals, Second Circuit.
 Dec. 13, 1995.
 
 1
 APPEARING FOR APPELLANT: Eugene Gulland, Covington & Burling, Washington, D.C.
 
 
 2
 APPEARING FOR APPELLEE: Robert A. Weiner, McDermott, Will & Emery, New York, N.Y.
 
 
 3
 S.D.N.Y.
 
 
 4
 AFFIRMED.
 
 
 5
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 
 
 6
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.
 
 
 7
 The Bank of New York appeals from the May 2, 1995, judgment of the District Court dismissing the Bank's counterclaims against Lawyers Title Insurance Corp. Lawyers Title sued to obtain a declaratory judgment concerning its obligations under a title insurance policy that the Bank had purchased on its mortgage interest in a construction project; the Bank counterclaimed for breach of the policy.
 
 
 8
 The Bank contends that the District Court erred in holding that the "pending disbursement" clause of the insurance contract permitted Lawyers Title to limit the amount of its insurance coverage of a known risk as soon as the risk materialized into an objection to title. Instead, the Bank argues, the contract permitted Lawyers Title to except from coverage only actual defects and any newly-arising risks of such defects. Because the parties knew at the formation of the contract that citizens might challenge the validity of the construction project's lease, the Bank claims that Lawyers Title breached when it refused to provide any further insurance against this risk following the filing of a state court lawsuit midway through construction.
 
 
 9
 The Bank's argument misconstrues the "pending disbursement" provision of the contract. Under the plain language of the contract, this clause provides that Lawyers Title insures all covered risks up to the amount already disbursed by the Bank; however, if a "defect in, or objection to, title" should arise, Lawyers Title may cap its coverage for that risk at the amount already paid out. The incremental nature of the insurance allows the insurer to limit its exposure for any sums paid out by the Bank after a defect or objection arises.
 
 
 10
 The Bank claims that the lawsuit did not constitute a "defect in, or objection to, title" that would permit Lawyers Title to refuse to insure further disbursements against that risk. First, the Bank cites Heidi Associates v. Lawyers Title Insurance Co., 67 N.Y.2d 1041, 504 N.Y.S.2d 87 (1986), for the proposition that a lawsuit is not a defect or incumbrance separate from the circumstances being litigated, and thus the state lawsuit here could not have triggered the "pending disbursement" clause. However, as the District Court noted, Heidi Associates did not involve a "pending disbursement" clause (or any other contract provision) that created a contingency in case of an "objection to " title.
 
 
 11
 Second, the Bank argues that, under New York real estate law, an "objection" is a term of art meaning "defect" or "incumbrance" or "cloud on title;" thus, the argument continues, the pending disbursement clause is triggered only by defects or incumbrances and is not expanded by inclusion of the word "objection." The cases cited by the Bank, however, do not support this argument. Though the New York Court of Appeals has articulated the test of marketability of title as "whether there is an objection thereto such as would interfere with a sale," Voorheesville Rod & Gun v. E.W. Tompkins, 82 N.Y.2d 564, 571, 606 N.Y.S.2d 132, 135 (1993), citing Regan v. Lanze, 40 N.Y.2d 475, 481, 387 N.Y.S.2d 79, 83 (1976), this statement does not define an "objection" as the equivalent of a defect or incumbrance. It merely says that some objections may rise to the level of defects or clouds on title and therefore affect marketability of title.
 
 
 12
 At oral argument, the Bank sought to support its view that "objection" is merely a synonym for "defect" by relying on section 3(c) of the policy. Section 3(c) provides for damages under the policy where the property has been contracted for sale by or for the benefit of the insured, title has been rejected because of a "defect or incumbrance" not excepted, "and there has been a final determination sustaining the objection to the title." The Bank contends that this wording demonstrates that "objection" is a catch-all term intended to refer to the "defect or incumbrance" that occasioned the rejection of title. Even if, as the Bank contends, "objection" in section 3(c) includes "defect or incumbrance," it does not follow that "objection" is limited to "defect or incumbrance." Section 3(c) is fairly read to mean that if, in connection with a proposed sale, title is rejected because of a defect or incumbrance and if the objection that raised the alleged defect in title is sustained by a final determination, damages are available. That language does not alter the District Court's plain-meaning reading of the "pending disbursements" clause to mean that the filing of a lawsuit is an "objection" that justifies the insurer in declining to provide coverage for any disbursements made after the objection is lodged. The District Court correctly dismissed the Bank's counterclaims.