◼ Nichola P. Cone, Respondent, v Daniel J. Stranahan, Appellant. [843 NYS2d 717]—

Cardona, P.J. Appeal from an order of the Supreme Court (Krogmann, J.), entered July 13, 2006 in Warren County, which, among other things, granted plaintiff's motion for summary judgment.

In the fall of 2005, plaintiff approached defendant about the purchase of a parcel of unimproved land owned by defendant in the Town of Queensbury, Warren County. Before plaintiff made an offer, defendant informed her that there were "wetlands at the rear of the property" and, during an inspection of the parcel, plaintiff saw several piles of dirt that had been dumped thereon. Thereafter, on October 3, 2005, the parties executed a contract of sale, drafted by plaintiff's attorney, with a selling price of $65,000. No deposit was required of plaintiff, the inspection contingency clauses were waived and the contract called for a closing on October 14, 2005.

Prior to closing, however, a title search revealed that the property was encumbered by two workers' compensation liens. After an exchange of letters over the next few months, the parties resolved that issue by means of an escrow account. Subsequently, by letter dated January 5, 2006, plaintiff's counsel informed defendant's counsel of a new problem related to possible issues with the Adirondack Park Agency (hereinafter APA). Specifically, plaintiff, concerned over several loads of construction fill that defendant apparently dumped onto the property *after* the contract date, made inquiry to the APA as to whether the dumping might be in violation of regulations. The APA then informed defendant that it was commencing an investigation to determine whether defendant was "[f]illing wetlands subject to [APA] jurisdiction without a permit, and creation of a waste disposal area without a permit." Plaintiff requested that defendant provide her with confirmation from the APA that there were no violations and defendant refused, indicating that he was not obligated to do so. By letter dated February 9, 2006, defendant gave notice to plaintiff that time was of the essence and scheduled a closing date eight days later, which plaintiff failed to attend.

Thereafter, plaintiff commenced this action seeking specific performance of the contract and an order requiring defendant to comply with the APA investigation, providing assurances that there were no violations of the regulations. After joinder of issue, the parties cross-moved for summary judgment and Supreme Court granted plaintiff's motion, finding that defendant failed to convey a marketable title in accordance with his contractual obligations. Defendant was further directed to cooperate with the APA investigation and, if no violations were discovered, transfer the property to plaintiff.

We agree with defendant's argument that title was not rendered unmarketable because of the possibility that his actions violated APA regulations. Even an established violation of

a zoning ordinance does not render title unmarketable in the absence of a specific representation to that effect by the seller,[1] inasmuch as "marketability of title is concerned with impairments on title to a property, i.e., the right to unencumbered ownership and possession, not with legal public regulation of the use of the property" (*Voorheesville Rod & Gun Club v Tompkins Co.*, 82 NY2d 564, 571 [1993]; *see Vandervort v Higginsbotham*, 222 AD2d 831, 832 [1995]). Indeed, even the possible presence of environmental hazards on property does not implicate marketability of title, regardless of any potential remediation which might be required of the owner, since such a situation affects the property's value, not "one's right to 'unencumbered ownership and possession' " (*Vandervort v Higginsbotham*, 222 AD2d at 832, quoting *Voorheesville Rod & Gun Club v Tompkins Co.*, 82 NY2d at 571).

Here, given the absence of a legitimate reason for plaintiff to refuse to close on the ground that title was unmarketable, summary judgment on that basis should not have been granted. Furthermore, since the contract contains no inspection contingencies and imposes no affirmative duties on defendant, the direction that he await the results of an APA investigation prior to closing was improper. As it stands, while plaintiff's lawsuit ostensibly seeks specific performance, the practical effect is that it seeks to utilize the courts to impose inspection obligations upon defendant that not only were not included in the parties' contract (*see Voorheesville Rod & Gun Club v Tompkins Co.*, 82 NY2d at 572), but, in fact, concerned matters of which plaintiff was aware before the execution of the contract, i.e., the fill dumping, and, therefore, could have addressed at that time (*cf. East 15360 Corp. v Provident Loan Socy. of N.Y.*, 177 AD2d 280, 281 [1991]). In light of the contract terms, defendant acted within his rights, following the resolution of the escrow issue, by declaring time to be of the essence and scheduling a closing.[2] Since plaintiff did not attend, defendant was justified in indicat-

---

1. We note that, unlike a situation where a contract contains a provision where the seller warrants that a property will not be in violation of *any* zoning ordinance at the time of transfer (*see e.g. Voorheesville Rod & Gun Club v Tompkins Co.*, 82 NY2d 564, 572 [1993]), here, the contract indicated that the seller would only warrant that zoning and environmental laws would not be "violated by the buildings and improvements erected on the property." Given that the contract must be construed most strongly against plaintiff, the drafter (*see Agostinelli v Stein*, 17 AD3d 982, 985 [2005], *lv dismissed* 5 NY3d 824 [2005]), any contention that the provision could be interpreted to apply to the piles of construction fill on defendant's property is not persuasive.

2. We note that although plaintiff argues that defendant's dumping of construction fill on the property subsequent to execution of the contract should be considered a separate breach thereof, in that regard, the contract

ing that the contract was terminated in accordance with its terms (*see id.* at 282).[3]

Accordingly, we reverse the award of summary judgment in plaintiff's favor and grant defendant's cross motion for summary judgment dismissing the complaint.

Mercure, Peters, Spain and Carpinello, JJ., concur. Ordered that the order is reversed, on the law, with costs, plaintiff's motion denied, defendant's cross motion granted, summary judgment awarded to defendant and complaint dismissed.

stated that plaintiff had the right to inspect the property within 48 hours prior to the closing date to "ascertain there has been no material change in the condition of the property from the time of contract." Since plaintiff indicated that she would not attend a closing unless she received a "clearance" letter from the APA, issues related to that contract clause were never explored.

3. Notably, the contract specified that, in the event it was terminated, defendant's only remedy was to retain plaintiff's deposit, which in this case was zero. Defendant indicated on several occasions that he had no difficulty with both parties simply walking away from the transaction.