**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

GALVAN v POON

Docket No. 163741. Argued on application for leave to appeal April 5, 2023. Decided July 12, 2023.

Reyes Galvan and Minhwa Kim filed an action against Yam Foo Poon, Hwai-Tzu Hong Poon, and Daniel Y. Poon in the Washtenaw Circuit Court, alleging fraud, misrepresentation, fraudulent concealment, silent fraud, innocent misrepresentation, loss of consortium, and breach of a warranty deed. In 2017, plaintiffs bought a condominium in the city of Ann Arbor from defendants, and defendants transferred title to plaintiffs via a warranty deed. The deed warranted, among other things, that pursuant to MCL 565.151, the property was "free from all incumbrances." While renovating the condominium, plaintiffs learned of several issues with the property, including that there was no proper firewall between their condo and the neighboring units, and that one of the defendants had signed a unit-modification form indicating that a wall had been moved and that a neighboring unit encroached on the upstairs bathroom of plaintiffs' unit. Because the absence of a firewall violated the city's building code, the city sued plaintiffs and their adjoining neighbors to enforce the code and require installation of firewalls. Plaintiffs were ordered to pay $18,000, in part to bring the walls of their unit into compliance with the building code, and they also spent additional funds to remediate other problems with the property. During a jury trial, defendants moved for a directed verdict on plaintiffs' breach-of-warranty claim, arguing that the building code violations were not an encumbrance. The trial court, Timothy P. Connors, J., agreed and directed verdict in favor of defendants on this claim. The jury subsequently found in favor of plaintiffs regarding their claims of silent fraud and loss of consortium. Galvan appealed the directed verdict in the Court of Appeals (BORRELLO, P.J., and SERVITTO and STEPHENS, JJ.), which reversed in an unpublished per curiam opinion, determining that the building code violations constituted an encumbrance in violation of the warranty deed. Defendants applied for leave to appeal in the Supreme Court, which ordered and heard oral argument on the application. 509 Mich 938 (2022).

In a unanimous opinion by Justice VIVIANO, the Supreme Court, in lieu of granting leave to appeal, *held*:

A building code violation that is in existence at the time a warranty deed is executed and that is not yet subject to any official enforcement action does not constitute an encumbrance under MCL 565.151.

1. Does a building code violation that is not yet subject to any enforcement action constitute an encumbrance under MCL 565.151 and therefore breach a warranty deed? Deeds transfer ownership interests in real property. MCL 565.151 governs the effect of and covenants included in a warranty deed and provides in relevant part that the land is "free from all incumbrances . . . ." This case turns upon the scope of the term "encumbrance." This Court has described encumbrances as affecting the ownership rights to or interests in a property, not the property's material condition. Additionally, it is a well-established rule that a governmental regulation alone does not constitute an encumbrance. This rule reflects that there is a difference between economic lack of marketability, which concerns conditions that affect the use of the land, and title marketability, which relates to defects affecting legally recognized rights and incidents of ownership. Clear title to a property can be held despite the fact that the land is subject to laws restricting its use. Because such laws are not a burden on the title affecting rights or interests in the property, they are not encumbrances.

2. At issue in this case is not simply a governmental regulation but also the violation of that regulation. While courts are split regarding whether such violations generally may constitute encumbrances, almost no courts hold that a violation of a building code that is not the subject of an enforcement action is an encumbrance. Some caselaw treats zoning code violations as encumbrances because, in part, they are known and not hidden. Building code violations, by contrast, almost always involve obscure or technical details that would not be apparent to the parties. Because a building code violation that has not yet been the subject of enforcement action does not affect the rights to or interests in the property and is generally hidden or at least not readily known, it lacks the defining characteristic of an encumbrance. The fact that future enforcement actions might lead to a lien is not enough to transform a bare violation into an encumbrance because, to be actionable, the breach of the covenant against encumbrances must have occurred when the covenant was made. A contrary holding would not only disregard the longstanding meaning of "encumbrance" but would invite title disputes based on violations of building codes that would not be discovered during a normal title search or inspection of the property.

Court of Appeals judgment reversed, and case remanded to the trial court for reinstatement of the order granting defendants' motion for a directed verdict on the breach-of-warranty claim.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 12, 2023

S T A T E   O F   M I C H I G A N

SUPREME COURT

REYES GALVAN,

        Plaintiff-Appellee,

and

MINHWA KIM,

        Plaintiff,

v

No. 163741

YAM FOO POON, HWAI-TZU HONG
POON, and DANIEL Y. POON,

        Defendants-Appellants.

BEFORE THE ENTIRE BENCH

VIVIANO, J.

In 2017, plaintiffs, Reyes Galvan and Minhwa Kim, purchased a condominium from

defendants, Yam Foo Poon, Hwai-Tzu Hong Poon, and Daniel Poon. As part of the sale,

defendants transferred title to plaintiffs under a warranty deed. Pursuant to MCL 565.151,

the deed warranted that the property was "free from all incumbrances," among other things.[1]  It turned out that, at the time of sale, the property was in violation of a building code requiring a firewall between condominium units.  The question in this case is whether that violation constituted an encumbrance violating the warranty deed.  We hold that a violation of a building code at the time of sale, not yet subject to any official enforcement action, is not an encumbrance.

## I.  FACTS AND PROCEDURAL HISTORY

The property at issue was originally part of a three-unit townhouse.  It was subsequently converted into a single residence for a time, and the demising walls (i.e., those separating the units) were removed.  Later, when the property was again partitioned into three separate residences, the demising walls were reconstructed but placed in different locations.  As a result, they did not form a single wall from the foundation to the roof as required by the building code of the city of Ann Arbor (the City).  In addition, the contractors failed to install proper fire barriers behind the drywall of the units, which the City's building code also required.

Plaintiffs purchased one of the units, a condominium, in 2017.  They received a warranty deed that covenanted against encumbrances.  The sellers' disclosure form indicated that there were no known problems regarding the unit.  Plaintiffs learned of the code violations after they began renovations on the condominium.  At that time, they discovered staining on the drywall and learned of numerous past maintenance visits to fix

---

[1] The statute employs the spelling of "incumbrance" in usage in 1881, when the text was first enacted.  1881 PA 187.  The preferred modern spelling is "encumbrance," which we use in this opinion.  See *Garner's Dictionary of Legal Usage* (3d ed), p 316.

leaks. In addition, plaintiffs learned that one of the defendants had signed a unit-modification form indicating that a wall had been moved and that the neighboring unit encroached on the upstairs bathroom. After hiring contractors to remediate the problems, plaintiffs discovered that there was no proper firewall between the units.

The City sued plaintiffs and their two adjoining neighbors in 2018 to enforce the code and require installation of firewalls. Plaintiffs were ordered to pay $18,000, half of which was to bring the walls into compliance with the code and half to compensate a neighbor for the loss of a portion of her unit that was being transferred to plaintiffs to create a proper firewall. Plaintiffs also paid $27,160 for an architect to assist in the compliance repairs. Because plaintiffs initially lacked funds to pay the judgment, the City placed a lien on the property. Plaintiffs, who eventually paid the judgment and for the remediation, were forced to live elsewhere while the repairs were made.

Plaintiffs then brought the present lawsuit against defendants, alleging fraud, misrepresentation, fraudulent concealment, silent fraud, innocent misrepresentation, loss of consortium, and breach of the warranty deed. At trial, a real estate appraiser testified that the total cost of the building code violation was $30,000 and that a family could not reside in the unit until the violations were remedied. After the close of trial, but before the jury's verdict, defendants moved for a directed verdict on the breach-of-warranty claim. They argued that the building code violations were not an encumbrance. The trial court agreed, granting defendants' motion. The jury subsequently found that defendants withheld material facts about the condition of the property and were therefore liable for silent fraud. Plaintiffs were awarded $20,802 for Galvan's economic damages and $8,100 for Kim's noneconomic losses.

3

Plaintiff Galvan appealed the directed verdict on the breach-of-warranty claim, and the Court of Appeals reversed.[2] It observed that the code violations subjected plaintiffs to the threat of litigation and made the home unmarketable and uninhabitable. The Court of Appeals also cited various out-of-state cases in which violations of zoning ordinances were determined to be encumbrances. Accordingly, the Court determined that the building code violations constituted an encumbrance in breach of the warranty deed.

Defendants then sought leave to appeal in our Court. We ordered oral argument on the application, focusing on "whether the covenant of title under MCL 565.151, which states that the premises 'are free from all incumbrances,' includes a covenant that the structure of the premises conforms to currently applicable building codes."[3]

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for a directed verdict.[4] We likewise "review de novo questions of statutory interpretation."[5]

## III. ANALYSIS

The question in this case is whether a building code violation, not yet subject to any enforcement action, is an encumbrance under MCL 565.151, breaching the warranty deed.

---

[2] *Galvan v Poon*, unpublished per curiam opinion of the Court of Appeals, issued August 19, 2021 (Docket No. 352559).

[3] *Galvan v Poon*, 509 Mich 938, 938 (2022).

[4] *Elezovic v Ford Motor Co*, 472 Mich 408, 418; 697 NW2d 851 (2005).

[5] *Ally Fin Inc v State Treasurer*, 502 Mich 484, 491; 918 NW2d 662 (2018).

4

Deeds transfer the ownership interests in real property.[6] MCL 565.151 governs the effect

of and covenants included in a warranty deed:

> That any conveyance of lands worded in substance as follows: "A.B. conveys and warrants to C.D. (here describe the premises) for the sum of (here insert the consideration)," the said conveyance being dated and duly signed, sealed and acknowledged by the grantor, shall be deemed and held to be a conveyance in fee simple to the grantee, his heirs and assigns, with covenant from the grantor for himself and his heirs and personal representatives, that he is lawfully seized of the premises, has good right to convey the same, and guarantees the quiet possession thereof; that the same are free from all incumbrances, and that he will warrant and defend the title to the same against all lawful claims.

We have held that, to be actionable, the breach of the covenant against encumbrances must

occur when it is made.[7]

The case turns upon the scope of the term "encumbrance." When the statute was

first enacted in 1881, see 1881 PA 187, that term was defined in a leading legal dictionary

as "[a]ny right to, or interest in, land which may subsist in third persons, to the diminution

of the value of the estate of the tenant, but consistently with the passing of the fee."[8] In

---

[6] See *Gibson v Dymon*, 281 Mich 137, 141; 274 NW 739 (1937); Cunningham, Stoebuck & Whitman, *The Law of Property* (St. Paul: West Publishing Company, 1984), § 11.1, p 711 ("In nearly all sales of real property, the deed is the instrument used to effect the ultimate transfer of legal title.").

[7] See *Reed v Rustin*, 375 Mich 531, 535; 134 NW2d 767 (1965) ("[A] covenant against encumbrance is breached, when made, if at all . . . ."); *Smith v Lloyd*, 29 Mich 382, 385 (1874) ("[T]he covenant of seizin, and that against incumbrances, are broken, if ever broken at all, at the moment when made . . . .").

[8] Black, *A Dictionary of Law* (St. Paul: West Publishing Company, 1891), p 613. Lay dictionaries offered a similar definition. See *Webster's New International Dictionary of the English Language* (1921) ("*Law.* A burden or charge upon property; a claim or lien upon an estate, which may diminish its value; specif[ically], any interest or right in land

5

other words, an encumbrance has traditionally related to rights to or interests in the land itself rather than the condition of the property. Around the same time, we similarly stated:

> [A]nything is an encumbrance which constitutes a burden upon the title; a right of way, *Clark v. Swift*, [44 Mass 390 (1841),] a condition which may work a forfeiture of the estate, *Jenks v. Ward*, [45 Mass 404 (1842),] a right to take off timber, *Cathcart v. Bowman*, [5 Pa 317 (1847),] a right of dower, whether assigned or unassigned, *Runnells v. Webber*, 59 Me. 488 [1871]. In short, "every right to, or interest in the land, to the diminution of the value of the land, but consistent with the passage of the fee by the conveyance." *Prescott v. Trueman*, 4 Mass., 627, 630 [1808].[9]

This description of encumbrances focused on ownership interests in or rights to real property, not the material condition of the property itself.[10] We have repeatedly emphasized that an encumbrance affects the rights to or interests in the property.[11]

---

existing to the diminution of the value of the fee, but not preventing the passing of the fee by conveyance.").

[9] *Post v Campau*, 42 Mich 90, 94-95; 3 NW 272 (1879). *Post* preceded the enactment of 1881 PA 187 but reflected our prior caselaw holding that every contract conveying land "impliedly engages not merely . . . to give a good title, but also to convey by a deed containing the usual covenants," which included the covenant against encumbrances. *Dwight v Cutler*, 3 Mich 566, 577 (1855).

[10] Although we noted that encumbrances included "a condition" that could lead to forfeiture, we were not referring to the material conditions of the land. The case we cited, *Jenks v Ward*, 45 Mass at 413, involved a "condition" on the conveyance of land requiring that the grantee pay the outstanding mortgage on the property. Because the failure to perform the condition would forfeit the grantee's ownership of the property, the court determined it was an encumbrance. *Id*. at 413. The "condition" therefore related to the rights to and interests in the land.

[11] See *Darr v First Fed S & L Ass'n of Detroit*, 426 Mich 11, 20; 393 NW2d 152 (1986) (quoting the *Post* definition of encumbrances); *Porter v Ridge*, 310 Mich 425, 429; 17 NW2d 239 (1945) (same); *Lavey v Graessle*, 245 Mich 681, 683; 224 NW 436 (1929) (same); *Simons v Diamond Match Co*, 159 Mich 241, 247; 123 NW 1132 (1909) ("An incumbrance, within the meaning of covenants in deeds, has been broadly defined as 'every

It is a well-established general rule that a governmental regulation, standing alone, does not constitute an encumbrance. We have stated that "although restrictions on the use of land fixed by covenants or agreements between owners constitute encumbrances, restrictions imposed by legislative or municipal authority are not generally considered such."[12] This reflects black-letter law from across the country.[13] The reason for this rule is that zoning and building codes generally "are concerned with the use of the land. . . . There is a difference between economic lack of marketability, which concerns conditions that affect the use of land, and title marketability, which relates to defects affecting legally recognized rights and incidents of ownership."[14] Clear title to a property can be held

---

right to, or interest in the land granted, to the diminution of the value of the land, but consistent with the passing of the fee of it by the conveyance.' ") (citations omitted).

[12] *Wolff v Steiner*, 350 Mich 615, 625; 87 NW2d 85 (1957).

[13] See *Dover Pool & Racquet Club, Inc v Brooking*, 366 Mass 629, 631; 322 NE2d 168 (1975) ("In general building and zoning laws in existence at the time a land contract is signed are not treated as encumbrances, and the purchaser has no recourse against the vendor by virtue of restrictions imposed by such laws on the use of the property purchased."); *Marathon Builders, Inc v Polinger*, 263 Md 410, 418; 283 A2d 617 (1971) ("The weight of authority indicates that zoning and other ordinances and statutes concerned with the use of the land involved do not constitute an encumbrance on the land and their lawful impact upon that use does not result in a breach of the covenant against encumbrances."); Garrison & Reitzel, *Zoning Restrictions and Marketability of Title*, 35 Real Est L J 257, 264 (2006) ("As a general proposition, the mere existence of a zoning law, building restriction or other property control is not considered an encumbrance that impairs marketability of title.").

[14] *Somerset Savings Bank v Chicago Title Ins Co*, 420 Mass 422, 428; 649 NE2d 1123 (1995); *Voorheesville Rod and Gun Club, Inc v EW Tompkins Co, Inc*, 82 NY2d 564, 571; 626 NE2d 917 (1993) ("[M]arketablity of title is concerned with impairments on title to a property, i.e., the right to unencumbered ownership and possession, not with legal public regulation and the use of the property . . . .").

despite the fact that the land is subject to laws restricting its use.[15]  Because such laws are not a burden on the title affecting rights or interests in the property, they are not encumbrances.[16]  Moreover, some courts have observed that to hold that all governmental regulations, standing alone, constitute encumbrances would force the seller to "become a warrantor that the building complied in all respects with the building laws or ordinances in force in the locality."[17]  This would impose an onerous burden, given the numerous regulations applicable to land and buildings and the fact that owners usually contract out the repair and modification work to which those regulations apply.[18]

In the present case, we are dealing with not simply a governmental regulation but also the violation of that regulation.  While courts are split on whether such violations generally may constitute encumbrances, it appears that almost none hold that violations of *building codes* (as opposed to other regulations, like zoning laws) that are not the subject

---

[15] *Somerset*, 420 Mass at 428.

[16] See *Hoffer v Callister*, 137 Idaho 291, 294; 47 P3d 1261 (2002) (observing that zoning ordinances do not create "rights, interests, or hostile titles" relating to land); *Marathon Builders*, 263 Md at 419 (" 'The [zoning] resolution in question simply regulates the use of property in the districts affected.  It does not discriminate between owners.  It is applicable to all alike.  Therefore the general and well-nigh universal rule should be applied, viz., that where a person agrees to purchase real estate, which, at the time, is restricted by laws or ordinances, he will be deemed to have entered into the contract subject to the same.  He cannot therefore be heard to object to taking the title because of such restrictions.' ") (alteration in original), quoting *Lincoln Trust Co v Williams Bldg Corp*, 229 NY 313, 318; 128 NE 209 (1920).

[17] *Berger v Weinstein*, 63 Pa Super 153, 158 (1916).

[18] See *id*.

of an enforcement action are encumbrances.[19]  In the courts that exclude violations of all types of regulations from the concept of encumbrances, a primary rationale is that the violation does not necessarily create "rights, interests, or hostile titles" relating to land.[20] Another rationale is the confusion that a contrary rule would cause, given that title searches and physical examinations of the premises would not reveal the violation; the remedy according to those courts is not to expand the category of encumbrances to include regulatory violations but for the parties' contract to provide for such violations.[21]

---

[19] See Comment, *Violations of Zoning Ordinances, The Covenant Against Encumbrances, and Marketability of Title: How Purchasers Can Be Better Protected*, 23 Touro L Rev 199, 205, 217 (2007) (noting the split and the exception for building code violations).

[20] See *Hoffer*, 137 Idaho at 294.  The court left open the possibility, however, that egregious or substantial violations, destroying the total value of the property, might constitute an encumbrance.  *Id*. at 295.

[21] See *id*. at 295 ("We decline to extend the traditional scope of a general warranty against encumbrances in such a manner as to include zoning matters.  To expand the concept of encumbrance as urged by [the plaintiff] would create uncertainty and confusion in the law of conveyancing and title insurance.  Neither a title search nor a physical examination of the premises would have disclosed the alleged violation.  The better way to deal with violations of zoning regulations is by contract provisions, which can give the purchaser full protection in a situation like this one."); *Barnett v Decatur*, 261 Ga 205, 205; 403 SE2d 46 (1991) ("We decline to extend the traditional scope of a general warranty of title in such a manner as to include" zoning code violations.); *Frimberger v Anzellotti*, 25 Conn App 401, 409; 594 A2d 1029 (1991) ("We . . . hold that the concept of encumbrances cannot be expanded to include latent conditions on property that are in violation of statutes or government regulations.  To do so would create uncertainty in the law of conveyances, title searches and title insurance.  The parties to a conveyance of real property can adequately protect themselves from such conditions by including protective language in the contract and by insisting on appropriate provisions in the deed."); *Monti v Tangora*, 99 Ill App 3d 575, 582; 425 NE2d 597 (1981) ("The problem created by the existence of code violations is not one to be resolved by the courts [by treating the violations as encumbrances], but is one that can be handled quite easily by the draftsmen of contracts for sale and of deeds. All that is required of the law on this point is that it be certain.  Once certainty is achieved, parties and their draftsmen may place rights and obligations where they will.  It is the

Other courts generally hold that violations of certain other regulations and ordinances can be encumbrances—but almost all of these courts have concluded that violations of building or housing code regulations are not encumbrances.[22] This body of caselaw treats zoning code violations as encumbrances because, in part, they are patent, i.e., known or unhidden.[23] Similarly, zoning code violations have been considered encumbrances because they pose the same problems as more traditional encumbrances, i.e., they involve encroachments on the land or the removal of an entire structure to cure the violation.[24]

---

stability in real estate transactions that is of paramount importance here."); *Fahmie v Wulster*, 81 NJ 391, 397; 408 A2d 789 (1979) ("To expand the concept of encumbrance" to include violations of laws or regulations "would create uncertainty and confusion in the law of conveyancing and title insurance. A title search would not have disclosed the violation, nor would a physical examination of the premises."); *Voorheesville*, 82 NY2d at 572-573 ("The solution . . . is not for the courts to expand the conditions which render title unmarketable, thereby altering the concept of marketability of title, but for the parties to real estate contracts to include specific provisions" in the contract); see also *Zoning Restrictions*, 35 Real Estate L J at 275-278 (discussing this caselaw).

[22] See generally *Zoning Restrictions*, 35 Real Estate L J at 273 ("The 'existing violation' exception [to the rule that ordinances are not encumbrances] is subject to a qualification" that generally excludes building and housing code violations.).

[23] *Id*.

[24] See *Feit v Donahue*, 826 P2d 407, 411 (Colo App, 1992) (noting that the "zoning violation required major structural alterations or removal in order to comply with the zoning law," including either the destruction and rebuilding of part of a house or the completion of an entirely new garage); *FFG, Inc v Jones*, 6 Hawaii App 35, 48-49; 708 P2d 836 (1985) (noting that the cases holding that a zoning code violation is an encumbrance all involve encroachments or the removal of entire buildings); *Moyer v DeVincentis Constr Co*, 107 Pa Super 588, 593; 164 A 111 (1933) (noting that the purchaser of land involving an encroachment in violation of a zoning ordinance "is not in any better position legally than if the house had encroached upon the street or upon the premises of an owner other than the vendor").

Building or housing code violations, by contrast, almost always involve obscure or technical details pertaining to the condition of the buildings that would not be apparent to the parties.[25] As one court observed, "to hold building code violations are encumbrances would impose a heavy burden on intervening purchasers since violations of the technical requirements of building codes are often difficult to ascertain once construction has been completed."[26] In light of this reasoning, courts routinely decline to treat building code violations as encumbrances.[27] The rare exceptions involve violations that were already subject to governmental enforcement actions when the deed was executed.[28]

---

[25] *Domer v Sleeper*, 533 P2d 9, 13 (Alas, 1975).

[26] *Id*.

[27] See *Feit*, 826 P2d at 411 ("Notwithstanding that the authorities are somewhat divided on the effect of zoning law violations, . . . they nearly uniformly hold that the sale of a property with structures built in violation of a building code is not a breach of the covenant against encumbrances."); *Stone v Sexsmith*, 28 Wash 2d 947, 951; 184 P2d 567 (1947) (" '[A] claim for breach of covenant cannot be predicated on the condition of the premises as to dilapidation or the existence of a nuisance or the necessity of repair or alternation to conform to building laws.' "), quoting 21 CJS, Covenants, § 98; *Gaier v Berkow*, 90 NJ Super 377, 379; 217 A2d 642 (1966) (finding no support for the proposition that violations of building requirements could constitute an encumbrance); *Berger*, 63 Pa Super at 158 (noting that the court had not discovered any case holding that a violation of a building code has "been held to be a fact affecting the title or in the class of encumbrances"); see generally *Violations of Zoning Ordinances*, 23 Touro L Rev at 216 ("The majority of jurisdictions have . . . held that violations of building codes do not constitute encumbrances.") (collecting cases); *Zoning Restrictions*, 35 Real Estate L J at 279 (noting that courts automatically treat building code violations as latent defects and thus hold they are not encumbrances); cf. *McCrae v Giteles*, 253 So 2d 260, 262 (Fla App, 1971) ("We have concluded that a building code violation of which the vendor has notice is not an encumbrance within the meaning of covenant against encumbrances.").

[28] See *Brunke v Pharo*, 3 Wis 2d 628; 89 NW2d 221 (1958). *Brunke*'s limited holding was that a violation of a building code "with respect to which the agency charged with enforcement has begun to take official action is an incumbrance." *Id*. at 631; see also

We agree with the general rule and hold that a violation of building codes, which has not yet been subject to any official enforcement action, is not an encumbrance.[29] Such a violation does not affect the rights to or interests in the property and it is hidden or at least not readily known. It therefore lacks the defining characteristic of an encumbrance.[30] To hold otherwise would not only disregard the longstanding meaning of encumbrance, it would also destabilize our system of conveying real property by inviting title disputes based on violations of building codes that would not be discovered during a normal title search or inspection of the property. Parties to land transfers are free to allocate the risk of

---

*Ableman v Slader*, 80 Ill App 2d 94, 98-99; 224 NE2d 569 (1967) (noting that "the existence of a building code violation does not of itself constitute a cloud on title where the real estate sale contract calls only for the passing of 'good title,'" but that the pendency of a lawsuit for those violations might). This caselaw has been distinguished when enforcement actions have not begun. See *Domer*, 544 P2d at 12 (distinguishing *Brunke* on the ground that the violation in *Domer* was not subject to enforcement action when the deed was executed); *Gaier*, 90 NJ Super at 379 (citing *Brunke* but noting, "[n]or are we confronted here with a situation where prosecution was imminent when the deed was executed"). One other court found an encumbrance where there was a violation of state law and building codes requiring water services to be connected to the property—a seemingly obvious defect. *First American Fed S & L Ass'n v Royall*, 77 NC App 131, 135-136; 334 SE2d 792 (1985). But the court did not explain its reasoning, and we do not believe that *First American* justifies a departure from the predominant view that building code violations are not encumbrances.

[29] Because the violation in this case was not subject to enforcement proceedings or related litigation until after execution of the deed, we need not decide whether a violation subject to such proceedings or litigation when the deed was executed would be an encumbrance.

[30] See *Post*, 42 Mich at 94-95.

such violations by contract. We decline to do so by expanding the concept of encumbrance.[31]

In reaching a contrary conclusion, the Court of Appeals relied upon various out-of-state cases holding that zoning code violations are encumbrances.[32] But as discussed, those cases are distinguishable from the present case, which involves a building code violation. Zoning violations generally are discoverable and can affect the property in a manner similar to traditional encumbrances. The Court below also suggested that the mere threat of litigation over the violation was enough to turn the violation into an encumbrance. This reasoning sweeps too broadly.[33] We are aware of no case holding that the mere risk of litigation concerning a matter that is not an encumbrance suffices to create an encumbrance.[34] Similarly, the fact that future enforcement actions might, as in this case,

---

[31] While, as explained above, zoning codes are distinguishable from building codes, we are not called upon here to decide whether violations of the former could be encumbrances, and so we offer no opinion on the subject.

[32] See *Oatis v Delcuze*, 226 La 751; 77 So2d 28 (1954) (building residential apartments violated a zoning ordinance restriction on family residences); *Lohmeyer v Bower*, 170 Kan 442; 227 P2d 102 (1951) (addressing location of a structure in violation of a zoning ordinance); *Moyer*, 107 Pa Super 588 (involving a violation of a house setback ordinance). The Court of Appeals also cited caselaw involving actual title disputes or encroachments on the land. *Praegner v Kinnebrew & Ratcliff*, 156 La 132, 136; 100 So 247 (1924) (dealing with an actual title dispute, which all parties in this case would acknowledge is an encumbrance on title); *Bethurem v Hammett*, 736 P2d 1128 (Wy, 1987) (involving an encroachment).

[33] See *Zoning Restrictions*, 35 Real Estate L J at 268 ("The 'hazard of litigation' rationale is not, in itself, a sufficient basis for an 'existing violation' exception, since all manner of issues relating to property can lead to litigation.").

[34] The Court of Appeals cited *Lohmeyer*, 170 Kan at 448, as support for the proposition that "the violation of the building code ordinance constituted an encumbrance on the title as it immediately opened plaintiffs up to the risk of litigation and made their home

13

lead to a lien is not enough to transform a bare violation into an encumbrance. As noted, breach of the covenant occurs, if at all, when the covenant is made.[35]

Applied to the facts of this case, our holding requires reversal of the Court of Appeals' judgment. The violation at issue was of a building code regulating the building's firewall, and the City had taken no actions to enforce the code at the time the warranty deed was executed. While the violation impaired the condition of the property, it was not an encumbrance that affected the ownership interests in the land. Therefore, the building code violations did not breach the warranty deed under MCL 565.151.

## IV. CONCLUSION

For the reasons above, we hold that a building code violation, in existence at the time a warranty deed is executed and not yet subject to any enforcement actions, does not constitute an encumbrance under MCL 565.151. Accordingly, the Court of Appeals erred

---

unlivable and unmarketable." *Galvan*, unpub op at 3 & n 4. *Lohmeyer* held that a zoning code violation rendered title doubtful because it subjected the purchaser to litigation, and thus the title was unmarketable. *Lohmeyer*, 170 Kan at 448-449. It did not hold, however, that the mere threat of litigation was itself an encumbrance. It is true that the risk of litigation can sometimes render a title unmarketable when the litigation "challeng[es] [the purchaser's] possession and interest" in the property. *Bartos v Czerwinski*, 323 Mich 87, 92; 34 NW2d 566 (1948). But the issue we face here is whether the violation was an encumbrance under MCL 565.151, not whether the title was more broadly unmarketable. The question of whether the risk of litigation could impair the marketability of title in some way other than by creating an encumbrance is not before the Court. We acknowledge that the Court of Appeals has held that a standard warranty deed under MCL 565.151 includes a guarantee of marketable title. See *Eastbrook Homes, Inc v Dep't of Treasury*, 296 Mich App 336, 348; 820 NW2d 242 (2012). However, plaintiffs have not clearly raised or developed the argument that their breach of warranty claim should proceed on this basis, so we decline to address the issue.

[35] *Reed*, 375 Mich at 534.

14

in reaching the contrary conclusion.  We reverse that judgment and remand to the trial court for reinstatement of its order granting defendants' motion for a directed verdict with regard to the claim at issue here.

David F. Viviano
Elizabeth T. Clement
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden